FOX, Justice.
[¶1] Father, Jim R. Kappen, petitioned for custody modification transferring primary custody of the parties' youngest daughter, GK, to him. Mother, Darla D. Kappen, opposed the modification, and after a trial on the merits, the district court found that a material change in cireumstances had oc *380 curred since the entry of the original custody order, and that it was in the best interests of GK for Father to become her primary custodian. Mother appealed and we reverse.
ISSUE
[¶ 2] Mother raises only one issue on appeal, which we restate as:
1. Was there a material change in circumstances warranting the district court's reopening of the existing custody order?
FACTS
[¶ 3] The parties were divorced on February 9, 2010. The district court determined that Mother should have primary physical and legal custody of the children,[1] and Father was given standard visitation-every other weekend, sixty days during the summers, and alternating holidays. After the divorce, both parties continued to live in Lingle, Wyoming, though Father spent and continues to spend a great deal of his time in Bayard, Nebraska, sixty-five miles from Lingle. Mother worked at Wyrulee, a job she had held for many years. In January 2013, Mother was cited for stealing a fellow employee's cell phone. She contested the citation, but was convicted by a jury of a misdemeanor. Wyrulee terminated Mother's employment as a result of the incident. At the time of the hearing, Mother remained unemployed. Despite her loss of employment, Mother remained financially secure as a result of substantial savings she had amassed over time.[2]
[¶ 4] In the spring of 2013, Mother began planning a move to Denver with GK to live with her then boyfriend, Garrett Kato, whom Mother later married. Mother placed her home on the market in May 2018, but did not discuss her planned move with Father. On July 16, 2018, while GK was in Father's custody for summer visitation, Father filed a petition to modify custody alleging that a material change in circumstances had occurred as Mother was providing an unstable environment for GK.
[¶ 5] Father returned GK to Mother's custody on July 31, 2013. Mother and GK then moved to Denver and Mother enrolled GK in school there. In accordance with the Decree of Divorcee which required the parties to "provide the other party with immediate notice of any change of address[,]" Mother filed a Report of Address to inform the district court and Father of her move on August 2, 2018. Father testified at trial that this was the first time he definitively knew that Mother and GK had moved to Denver, though he had "suspicions" of the move for some time. |
[¶ 6] On August 8, 2013, Father filed a motion requesting that the district court prohibit GK's move out of Wyoming. Mother answered and the district court held a hearing soon after. The district court found that it was in the best interests of GK to remain in Lingle during the pendency of the proceedings, and awarded Father temporary custody of GK, pending a hearing on the merits. Mother was awarded standard visitation during the period of temporary eusto-dy with Father.
[¶ 7] After the district court entered its order awarding temporary custody to Father, Mother moved back to Lingle for a short time, hoping that the move would reflect positively on her at the modification hearing. Mother soon realized, however, that returning to Lingle had been a mistake, and she moved back to Denver, where she was living at the time of the modification hearing.
[¶ 8] The district court held a hearing on Father's petition to modify custody on November 25, 2018. It then issued its Order Modifying Child Custody, Child Support and Visitation, stating:
5. The Court recognizes that modification of a child custody and child visitation order is conditioned upon a finding of a material change in circumstances affecting the *381 child's welfare which has occurred after entry of the order in question, that the change warrants modification of the order, and that the modification will be in the best interests of the child.
6. There has been a material change in cireumstances affecting the child's welfare sufficient to warrant modification of the Court's February 9, 2010 Decree of Divoree regarding child custody, child support and visitation as follows:
i. In January 2018, [Mother] was fired from her employment for stealing from a co-worker, subsequently convicted of larceny in the Goshen County Circuit Court, maintained a relationship with Mr. Milner, was recently married to Mr. Kato, and in a short period of time moved to and from and then back to Denver. [Mother] is not now employed and lives in Denver with her current husband. All of this adds up to a material change in cireumstances. ii. The Court concludes that while the minor child has a good relationship with both parents, [Mother's] actions indicate a lack of judgment and personal stability and [Father] can provide a more stable environment for the minor child.
[¶ 9] Mother appealed.
STANDARD OF REVIEW
[¶10] Decisions affecting child custody rest within the sound discretion of the district court. CLH v. MMJ (In re TLJ), 2006 WY 28, ¶ 6, 129 P.3d 874, 876 (Wyo.2006). We will not disturb the district court's findings "absent procedural error or a clear abuse of discretion." Id. (citing Selvey v. Selvey, 2004 WY 166, ¶ 15, 102 P.3d 210, 214 (Wyo.2004)). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the cireum-stances and without doing so arbitrarily and capriciously." Id. (quoting Fergusson v. Fergusson, 2002 WY 66, ¶ 9, 45 P.3d 641, 644 (Wyo.2002)). Our primary goal in reviewing for an abuse of discretion is determining whether the district court's decision is reasonable. Id. (citing Selvey, 2004 WY 166, ¶ 15, 102 P.3d at 214). "We view the evidence in the light most favorable to the district court's determination, affording to the prevailing party every favorable inference and omitting from our consideration conflicting evidence." Id. (citing Selvey, 2004 WY 166, ¶ 15, 102 P.3d at 214).
[¶11] In custody modification proceedings, the party seeking to modify eusto-dy carries the burden of establishing that a material change in cireumstances affecting the child's welfare has occurred subsequent to the entry of the initial decree, and that the modification would be in the best interests of the child affected. Jackson v. Jackson, 2004 WY 99, ¶ 7, 96 P.3d 21, 24 (Wyo.2004). "A district court's findings concerning a material change in cireumstances is principally a factual determination to which we accord great deference." Morris v. Morris, 2007 WY 174, ¶ 7, 170 P.3d 86, 89 (Wyo.2007) (quoting In re TLJ, 2006 WY 28, ¶ 11, 129 P.3d at 877). "Our task is simply to determine whether, examining the record in the light most favorable to the successful party, the district court could have reasonably concluded as it did." Walker v. Walker, 2013 WY 132, ¶ 21, 311 P.3d 170, 175 (Wyo.2013) (quoting Hanson v. Belveal, 2012 WY 98, ¶ 13, 280 P.3d 1186, 1192 (Wyo.2012)).
DISCUSSION
[¶ 12] Generally, child eustody orders are subject to the doctrine of reg judicata, barring relitigation of issues presented [3] and decided in a previous proceeding. Arnott v. Arnott, 2012 WY 167, ¶ 13, 293 P.3d 440, 444 (Wyo.2012) (citing Mentock v. Mentock, 638 P.2d 156, 158 (Wyo.1981) ([Rles judicata provides an endpoint to litigation and prevents the legal system from becoming "so bogged down that nothing would ever remain decided.")). We have *382 recognized, however, that in the context of modifying child custody, the application of res judicata may be inappropriate in some cireumstances. Id. at ¶ 13, 293 P.3d at 444-45. New issues and facts may create a material change in cireumstances, thus mandating a new adjudication of the parties' rights. Id. at ¶ 13, 293 P.3d at 445. However, because "stability in a child's environment is of utmost importance to the child's well-being," Reavis v. Reavis, 955 P.2d 428, 432 (Wyo.1998), "changes in custody are not favored and should not be granted except in clear cases." Morris, 2007 WY 174, ¶ 27, 170 P.3d at 93.
[¶13] The doctrine of res judicata "has been functionally incorporated as a threshold inquiry under Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 20[13] )." Arnott, 2012 WY 167, ¶ 14, 293 P.3d at 445. Section 20-2-204(c) states, in pertinent part:
A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in cireumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a).[4]
[¶ 14] Accordirigly, a district court cannot reopen an existing custody order until the moving party establishes a "material change of cireumstances which outweigh society's interest in applying the doctrine of res judieatal.]" In re TLJ, 2006 WY 28, ¶ 8, 129 P.3d at 876 (quoting Kreuter v. Kreuter, 728 P.2d 1129, 1130 (Wyo.1986)). The district court cannot consider the best interest factors set forth in Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2018) unless and until it has determined that a material change in cireumstances has occurred. Id.
[¶15] In examining whether there is a material change in cireumstances, we have required district courts to establish that the change has, in some way, affected the welfare of the child. Hanson, 2012 WY 98, ¶ 19, 280 P.3d at 1193; Morris, 2007 WY 174, ¶ 6, 170 P.3d at 89; Jackson, 2004 WY 99, ¶ 8, 96 P.3d at 24; Fergusson v. Fergusson, 2002 WY 66, ¶ 9, 45 P.3d 641, 644 (Wyo.2002); Cobb v. Cobb, 2 P.3d 578, 579-80 (Wyo.2000); Sorensen v. May, 944 P.2d 429, 432 (Wyo.1997); Yates v. Yates, 702 P.2d 1252, 1255 (Wyo.1985). It is not enough for a parent seeking a modification to show only that a change has occurred, that parent must also demonstrate that the change holds some relevance in the child's life. Id. "[Thhe test is whether the change in circumstances 'affects the child's welfare. ...'" KES v. CAT, 2005 WY 29, ¶ 11, 107 P.3d 779, 782 (Wyo.2005) (quoting JRS v. GMS, 2004 WY 60, ¶ 10, 90 P.3d 718, 723 (Wyo.2004)).
[¶16] We turn to the district court's determination that a material change in cireum-stances warranted the reopening of the custody order in this case. Mother argues that the district court erred when it found that a material change in cirenmstances had occurred because Father presented no evidence that GK's welfare was affected by the changes. After a thorough review of the record, we find that Father failed to meet his burden to demonstrate a material change of cireumstances. Thus, the district court abused its discretion when it reopened and modified the existing custody order.
I. Was there a material change in circumstances warranting the district court's reopening of the existing custody order?
[¶17] The district court found an overall lack of stability in Mother's life to sustain its finding that a material change in civreum-stances affecting the welfare of the child had occurred. Specifically, the district court found that the termination of Mother's employment, Mother's misdemeanor conviction, Mother's relationship with a former boyfriend, Mother's marriage to Mr. Kato, and Mother's moves between Denver and Lingle created a material change in circumstances affecting GK's welfare which warranted the reopening of the existing custody order.
*383 [¶18] Mother's counsel at the hearing on motion for temporary order stated his opinion that "a material change in cireumstances always occurs when you move," and the guardian ad litem also indicated her view that relocation in itself results in a material change in cireumstances. Those views are inconsistent with our holding in Arnott There we overturned our long-standing presumption that relocation by a custodial parent cannot, in and of itself, constitute a material change in cireumstances. Arnott, 2012 WY 167, ¶ 40, 293 P.3d at 458. We recognized that "a relocation by the primary physical custodian, as well as 'factors that are derivative of the relocation'-including 'the inherent difficulties that the increase in geographical distance between parents imposes'-may constitute a material change in cireumstances sufficient to warrant consideration of the best interests of the children." Id. (emphasis added). But in Arnott, we rejected the application of any presumption to the relocation of a custodial parent, including a presumption that a relocation automatically creates a material change in circumstances. Id. at ¶ 38, 293 P.3d at 457 ("[P in favor of one parent or another are detrimental to the interests of all parties in cases involving modification of child custody based on relocation of a eusto-dial parent.").
[¶19] Instead, we adopted a multi-factor test for determining whether a eusto-dial parent's move constitutes a material change of circumstances:
[A] change in the ability of the parties to maintain the existing parenting agreement, a change in the ability of the child[ ] to maintain a close relationship with the remaining parent, factors affecting the quality of life in the new location, the child's geographic preference, and the relative merits of available social and educational opportunities in the new location.
Id. at ¶ 39, 293 P.3d at 457-58.[5] We acknowledge that many of these factors correspond to some of those required in a best-interest analysis. See Wyo. Stat. Ann. § 20-2-201(a). We have also recognized, however, that in some cireumstances, the factors that district courts consider in determining whether there has been a material change in cireumstances "might also be relevant to an analysis of the best interests of the child." In re TLJ, 2006 WY 28, ¶ 10, 129 P.3d at 877.
[¶ 20] The move to Denver did not change the parties' ability to maintain the existing parenting agreement. Prior to being awarded temporary custody of GK, Father exercised standard visitation-every other weekend, alternating holidays, and sixty days during the summer. The parties both agreed at the modification hearing that this visitation schedule could continue after GK's move to Denver.[6] In fact, Mother exercised the same visitation when she was living in Denver and Father had temporary custody of GK in Lingle Likewise, there would be no change in GK's ability to maintain a close relationship with Father. Father could maintain frequent visitation with GK just as he did prior to filing his petition to modify custody.
[¶ 21] The district court made no findings as to how GK's quality of life would be affected by her move to Denver. Undoubtedly, her lifestyle would change; however, there are advantages and disadvantages to living in either Lingle or Denver. Moreover, the record reflects that GK enjoyed a similar quality of life in Denver as she had in Lingle. She lived in a single-family home with her own bedroom; she attended school, with a similar class size, and participated in extracurricular activities. And while she moved away from a small, close-knit community, she also benefitted from additional opportunities in Denver that were not available in Lingle.
[¶ 22] Looking to the relative social and educational opportunities available in Denver and Lingle, the district court concluded, "[GK] will excel academically in either Denver or Lingle schools. She will have excel *384 lent opportunities at activities." The record supports this conclusion. By all accounts, GK is a very bright, happy, well-liked little girl who will be able to adapt to any situation.
[¶ 23] Application of the Arnott factors establishes that Mother's move to Denver with GK is essentially a wash. While there are some obvious benefits to growing up in a small town in Wyoming, there are also benefits that Denver provides which Lingle lacks. Father had the burden of establishing that the move constituted a material change of cireumstances outweighing society's interest in applying the doctrine of res judicata. In re TLJ, 2006 WY 28, ¶ 8, 129 P.3d at 876. He failed to do so.
[¶ 24] The district court also cited Mother's move from Colorado back to Lingle, and then back to Colorado, following its entry of the temporary custody order, as evidence of a material change in cireumstances. While these relocations may have amounted to a material change of cireumstances in Mother's life, there was no evidence that they affected GK. The moves were made when Mother was not the primary custodian of GK, and they did not affect the visitation schedule between Mother and GK. Additionally, Mother's relocations were made in' response to the district court's order awarding Father temporary custody. While GK was aware that Mother moved back to Lingle for a short period of time, there was no evidence presented that GK was affected by Mother's move.
[¶ 25] The district court cites to Mother's loss of employment as evidence of a material change in cireumstances. While it is true that the loss of a parent's employment can cause a material change in the parent's life, we must examine whether the change affects the welfare of the child. Termination of a parent's employment may affect a child in that the parent's ability to provide for the child may suffer. That was not the case here. Father presented no evidence that Mother was unable to provide for GK. In fact, the uncontradicted testimony reflects that Mother has substantial savings to support herself and GK while she decides whether to obtain other gainful employment or return to school.[7] Moreover, the record re-fleets that Mother and her new husband, Mr. Kato, pool their financial resources, which provides additional financial stability for GK. Mother's loss of employment does not constitute a material change in cireumstances affecting the welfare of the child.
[126] Mother's misdemeanor conviction was also cited by the district court as contributing to a material change in cireum-stances. Father testified that he was concerned about Mother's criminal conviction because "you know, [GK] at some point in her life is going to know that her mother was convicted of theft." Father presented no evidence as to how this conviction affected GK prior to the modification hearing, and only provides speculation that it may affect GK in the future. This, alone, is not enough to demonstrate that a material change in cireumstances occurred affecting the welfare of the child, See Ludwig v. Burchill, 481 N.W.2d 464, 468-69 (N.D.1992) (upholding a district court decision refusing to modify custody despite Father's DUI conviction).
[¶ 27] Another contributing factor to the district court's finding of a material change in cireumstances was Mother's dating during the time between the divorce and her relationship with Mr. Kato. The record reflects that Mother maintained a romantic relationship with Mr. Milner following her divorcee from Father, three years prior to the modification hearing. She subsequently had occasional casual dates with other men. There is no record support for a finding that this conduct on mother's part resulted in a material change in cireumstances that affected GK's welfare.
[¶ 28] The district court also cited Mother's marriage to Mr. Kato as evidence of a change in cireumstances. We have previously stated that remarriage by one parent, standing alone, does not constitute a material change in cireumstances. Kreuter, 728 P.2d at 1130; see also Fergusson, 2002 *385 WY 66, ¶ 18, 45 P.3d at 646. When viewed independently, therefore, Mother's marriage does not amount to a material change in circumstances. We have held that remarriage combined with other factors associated with the marriage may amount to a material change. Fergusson, 2002 WY 66, ¶ 18, 45 P.3d at 646. In Fergusson, the mother remarried, and evidence was presented that the children suffered as a result of the remarriage. Id. at ¶ 18, 45 P.3d at 646. There was mistreatment by the stepfather, an improper touching incident between daughter and stepbrother, the children's behavior and appearances changed for the worse, and the children were withheld from their relatives by the stepfather. Id. We therefore upheld the district court's determination that a material change in cireumstances affecting the welfare of the children had occurred. Id. at ¶ 19, 45 P.3d at 647. While Mother's marriage to Mr. Kato presumably has some effect on GK, no evidence was presented demonstrating that the marriage was detrimental to GK, as was the case in Fergusson. Evidence presented shows that Mr. Kato is gainfully employed as an engineer, he owns a home in which GK has her own bedroom, and he has a good relationship with GK. The evidence does not support a finding that Mother's remarriage constitutes a material change in circumstances that affects the welfare of the child.
[¶ 29] We are mindful of the standard of review which requires us to accord great deference to the district court on a finding of material change in civreumstances, and of the requirement to afford the prevailing party every favorable inference, and we recognize this is a close case and a difficult call for the district court. However, we cannot find that the factors relied on by the district court, alone or in combination, amount to a material change in cireumstances that affects GK's welfare.
[¶ 30] In the context of custody disputes, we have asserted that "stability in a child's environment is of utmost importance to the child's well-being." Reavis, 955 P.2d at 432. In a number of cases, we determined that a lack of stability in the custodial parent's life constitutes a material change of cireum-stances warranting the reopening of an existing custody order,. BB v. RSR, 2007 WY 4, ¶ 17, 149 P.3d 727, 734 (Wyo.2007); Gray v. Pavey, 2007 WY 84, ¶ 13, 158 P.3d 667, 669 (Wyo.2007); Jackson, 2004 WY 99, ¶ 12, 96 P.3d at 26; Cobb, 2 P.3d at 580; Wilcox-Elliott v. Wilcox, 924 P.2d 419, 421 (Wyo.1996), overruled on other grounds by Clark v. Alexander, 953 P.2d 145 (Wyo.1998); Thompson v. Thompson, 824 P.2d 557, 559 (Wyo.1992). However, in each of these cases, the instability of the custodial parent was coupled with a marked increase of stability in the non-custodial parent. BB, 2007 WY 4, ¶ 17, 149 P.3d at 734; Gray, 2007 WY 84, ¶ 13, 158 P.3d at 669; Jackson, 2004 WY 99, ¶ 11, 96 P.3d at 25; Cobb, 2 P.3d at 580; Wilcox-Elliott, 924 P.2d at 421; Thompson, 824 P.2d at 559. In such cases there was a material change in cireumstances positively affecting the welfare of the child because one parent had significantly increased his or her ability to care for the child, while the other parent's abilities had either remained stagnant or decreased since entry of the original custody order. Id. However, we have cautioned:
It is not in the best interests of children to alter custody arrangements frequently and it is imperative that district courts be satisfied that such changes in the parents' relative circumstances be of such a nature that they will continue over time and not result in continual "back and forth" modifications of custody depending on which parent happens to be doing better at the time a petition to modify is filed. This consideration is especially important in situations where no emergency exists and the charges relate to one parent's improvement in comparison to the other "maintaining." . Changes in primary custody . are not good for the child and ought to be discouraged in the absence of some reasonably compelling story.
Jackson, 2004 WY 99, ¶ 11 n. 2, 96 P.3d at 25 n. 2.
[¶ 31] "A determination that cireumstances have materially changed is governed ... by an evaluation of the current cireumstances of the parties in relation to their cireumstances at the time the prior *386 custody order was entered." In re TLJ, 2006 WY 28, ¶ 10, 129 P.3d at 877. Father does not have stable employment and has not had such employment for many years. As a result, his income varies considerably and he receives government assistance when he is unable to make ends meet. While Father maintains a residence in Lingle, he spends a considerable amount of time working his family's farm in Bayard, Nebraska. Father identifies his residence as being "in Lingle, Wyoming, and near Bayard, Nebraska." Father also suffers from significant episodes of depression which has, at times, affected GK.
[¶ 32] The evidence presented at the modification hearing demonstrates that the relative abilities of the parties to parent GK have not changed appreciably. There was no showing that Father's stability has markedly increased since entry of the original custody order, and in fact, many of the examples of Mother's instability which concerned the district court were equally present in Father. This is not a situation in which Father has surged far ahead of Mother in his personal development and ability to serve as a parent. See Thompson, 824 P.2d at 559 (finding that the existing custody order should be modified because a material change in cireumstances had occurred due to mother's progress in her personal development and ability to serve as a parent). Because the relative abilities of the parties to parent GK have not materially changed, we find that the district court abused its discretion when it determined that the changes in Mother's life created a material change in circumstances warranting the reopening of the existing custody order.
CONCLUSION
[¶ 33] The district court "does not have the discretion to reopen a custody order simply because, looking at the best interests of the child, it believes it can make a better decision than was made in the prior custody order." In re TLJ, 2006 WY 28, ¶ 9, 129 P.3d at 877. The district court abused its discretion when it determined that a material change of cireumstances had occurred.[8] Reversed.

. At the time of the-divorce, the parties had two minor children, but when Father filed the petition to modify custody, one of the children had reached the age of majority. Thus, the only child at issue in the modification proceeding was GK.

. Mother received additional financial security by pooling her resources with her new husband, Garrett Kato. «

. Res judicata "is not strictly limited to issues actually presented, but also encompasses those issues that could have been brought in an earlier proceeding, but were omitted." Leonard v. State, 2014 WY 128, ¶ 7, 335 P.3d 1079, 1081 (Wyo.2014) (citing Hamill v. State, 948 P.2d 1356, 1358-59 (Wyo.1997)).

. A best interest inquiry entails consideration and analysis of those factors set forth in Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2013).

. The district court did not address any of the Arnott factors when it determined that Mother's move to Denver with GK contributed to its finding that there had been a material change in circumstances.

. The distance between Lingle and Denver is about 200 miles.

. The only testimony presented demonstrating that GK's needs were not being met due to lack of funds came from one of Mother's witnesses referencing Father's inability to provide for GK.

. We defer to the district court to effect the smoothest possible transition back to Mother's primary custody, which would include a determination of the best timing for GK to change schools, such as the end of the semester.