# IN THE SUPREME COURT, STATE OF WYOMING

# 2015 WY 56

APRIL TERM, A.D. 2015

April 14, 2015

HEIDI GJERTSEN,

Appellant
(Defendant),

v.                                                                                  S-14-0106

HERMAN TER HAAR,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
The Honorable John G. Fenn, Judge

*Representing Appellant:*
> Amanda K. Roberts of Lonabaugh & Riggs, LLP, Sheridan, Wyoming.

*Representing Appellee:*
> Rene Botten of Botten Law Office, Sheridan, Wyoming.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Justice.**

[¶1]    Pursuant to a California court order, Herman Ter Haar (Father) has sole legal and physical custody of the parties' child (the child), subject to limited visitation by Heidi Gjertsen (Mother).  Mother appeals from the district court's order denying her petition for modification of the California order pertaining to custody, care and visitation with the child.  We conclude the district court erred by failing to give full faith and credit to the terms of the California order which specifically allowed a change in the terms of visitation when it would be in child's best interests, but it correctly concluded there was no material change in circumstances to justify a change in custody.  Consequently, we reverse and remand in part and affirm in part.

## ISSUES

[¶2]    Mother presents the following issues on appeal, which we rephrase:

        1.      Did the district court err by failing to recognize that the foreign custody order allowed the visitation terms to be altered based on the best interests of the child without a showing of a material change in circumstances?

        2.      Did the district court err by finding no material change in circumstances to justify a change in custody?

Father presents a single issue:

        1.  Did the district court abuse its discretion when it denied Mother's petition to modify child custody, support, visitation and bond requirement by finding that she had failed to demonstrate a material and substantial change of circumstances as required by Wyoming law?

## FACTS

[¶3]    This case presents a unique set of facts and course of proceedings.  Neither Father nor Mother is a United States citizen although they both have permanent residence (green card) status.  One child was born as issue of their marriage in 2006.  The parties were divorced by the district court in 2009; however, the issues of child custody, visitation and support were not addressed by the Wyoming court because California was the child's home state at that time.  Prior to the California court's determination of child custody, etc., Mother removed the child from the United States to her native country, Norway, without Father's consent and in violation of a court order.  Father proceeded under the

2

Hague Convention on the Civil Aspects of International Child Abduction[1] to have the child returned to the United States and, after several months, he was successful.

[¶4]   With the child back in the United States, the California court held a number of hearings on the outstanding issues, and the parties were eventually able to reach an agreement regarding custody, visitation and child support.   The stipulated judgment stated that Father and the child had relocated to Sheridan, Wyoming and recognized that Mother had plans to move there, as well.   Father also married Carmela Ter Haar (Stepmother) and adopted her son (Stepbrother).   The California order specifically recognized that, given the child would be living in Wyoming with Father, Wyoming would be her home state commencing September 1, 2010.

[¶5]   The California order stated in relevant part:

> 5.   Whereas, [Father] is relocating to Sheridan, Wyoming, and on February 19, 2010, the Court granted his request that the minor child be permitted to move with him;
>
> 6.   Whereas, [Father] relocated to Wyoming on or about March 29, 2010, with [the child];
> . . . .
>
> 8.   Whereas, [Mother] intends to relocate to Sheridan, Wyoming;
> . . . .
>
> 11.   **Child Custody.**   [Father] is awarded sole legal and physical custody of the minor child . . . .   The parties stipulate that this order is in the best interests of [the child].   **The parties stipulate that this is a final and permanent determination of custody,** meeting the requirements of *Montenegro v. Diaz* (2001) 26 Cal 4th 249. . . . See also paragraph 27 herein.
>
> 12.   **Visitation Schedule.**   The minor child shall reside with [Father] at all times not set out below:
> > . . . .

---

[1] The Hague Convention establishes the "legal rights and procedures for the prompt return of children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights." 22 U.S.C. §§ 9001(a)(4).

b. It is anticipated that [Mother] will move to Wyoming before September 1, 2010. Therefore commencing on September 1, 2010 or the first day of the month following [Mother's] relocation to Wyoming, whichever is sooner, the parties stipulate and the Court orders the following visitation schedule:

c. [Mother] shall have visitation with [the child] on alternating weekends for the time periods setout herein below; in the event the parties are unable to determine an alternating weekend schedule, the schedule shall be determined by providing [Mother] all even-numbered weekends during a calendar year of 52 weeks, for the following time periods:

    i. Saturday: from 10 a.m. to 4:00 p.m.

    ii. Sunday from 10 a.m. to 4:00 p.m.

. . . .

d. Commencing on September 1, 2010, [Mother] shall have visitation with [the child] on every Wednesday evening from 5:30 p.m. to 7:30 p.m.

e. In the event that a visitation is missed due to travel, including consecutive weeks of vacation travel, or other obligations, it will be "made up" at the earliest mutually agreeable available date.

f. [Holiday visitation set out].

g. **Supervised Visitation.** Until [Mother] provides $50,000 in cash as security in the event of a re-abduction of [the child], . . . [Mother's] custodial time shall be supervised by a mutually agreed upon nonprofessional provider. . . .

h. **Travel.** [Mother] must have written permission from [Father] or a court order to take [the child] out of the state of Wyoming. [Mother] must have a court order to take [the child] out of the United States.

4

[Additional provisions pertaining to transportation, Mother's citizenship, notifications of authorities of order, restrictions on Mother's travel with the child and the security bond].

17. **Country of Habitual Residence.** The country of habitual residence of [the child] is the United States. [The child's] home state is California.

18. **Change of Home State.** Following their move to Wyoming, the parties stipulate and the court so finds that [the child's] home state shall be Wyoming, as California will be an inconvenient forum as neither [the child] [n]or the parties will be residents of California. Commencing September 1, 2010, Wyoming shall be the home state for [the child], pursuant to Wyoming Statute 20-5-301 and 20-5-307.

19. **Change of Residence.** [Father] shall not relocate with [the child] more than thirty (30) miles from the Sheridan, Wyoming court house without the written permission of [Mother] or an order of court.

[Provisions pertaining to child support, health care expenses, custody of child's passports, restrictions on discussion of the other parent and/or any litigation pertaining to the child in the presence of the child, and attorney fees].

27. **Final Judgment.** The orders herein are final and permanent; a material change of circumstances is required to modify these orders. However, [Mother's] visitation schedule may be adjusted on request by either party, without the necessity of proving a change of circumstances, as is in the best interests of [the child] as the Court, in its discretion, may believe proper.

Father registered the California judgment in the district court in Sheridan.

[¶6]    While Mother was still in California and the child was in Wyoming, visitation was conducted through Skype. Mother felt that her ability to communicate with the child was hampered because Father or Stepmother was always present during the Skype sessions.

5

Mother moved to Sheridan in January 2011 and began supervised visitation with CASA[2] monitoring. At some point, CASA advised it would not able to monitor the lengthy weekend visits. Mother posted bond in June 2012, and the parties began transitioning to unsupervised visitation.

[¶7]   The visitation exchanges were contentious, often involving disagreements between Mother, Father and Stepmother over documenting when the child was dropped off and picked up. In addition, the parties disagreed over Father's and Stepmother's discussion with the child of Mother's abduction or "kidnapping" of her and their disciplining the child by forcing her to take cold showers or eat hot sauce. Both parties called law enforcement on various occasions to address their disputes. The officers recommended the parties use CASA or at least a neutral site for exchanges. The child became anxious and sometimes refused to go to visits. At other times, she had tantrums while in Mother's care. The parties began video recording their interactions with each other and the child.

[¶8]   On February 22, 2013, Mother filed a petition to modify the California order. She asserted there had been material changes in circumstances since the California order was entered and sought modification of the custody, child support, visitation and bond provisions. Father contested Mother's petition and counterclaimed, requesting that his obligation to pay child support be removed and an order entered requiring Mother to pay him child support.[3]

[¶9]   In the spring of 2013, Father enrolled the child in counseling with licensed counselor, Deiadra (Dee) Smidt. Ms. Smidt gave all of the parties a list of rules for relating to each other and the child. These rules were designed to help the child's emotional state and included: no audio or video recording of the child; Father was not to threaten Mother with trespass when she came to his home; no unnecessary calls to law enforcement; no use of the techniques of cold showers or hot sauce to discipline the child (which the counselor characterized as "abuse"); Father and Mother, rather than Stepmother, would discipline the child unless they were not available; no quizzing the child; no "bad mouthing" each other in front of the child; and Father and Stepmother were to cease saying that Mother was mentally ill. The counseling was effective in helping relieve the child's anxiety about visitation with Mother. By the time of trial in November 2013, the mother/daughter relationship had improved and the exchanges were less contentious. In fact, law enforcement had not been asked to intervene for several months prior to trial.

---

[2] CASA stands for "court appointed special advocate." Wyoming Rules of Procedure for Juvenile Court, Rule 8.

[3] Under the terms of the parties' agreement and the California order, Father was required to pay Mother $200 per month in child support even though he had physical custody of the child.

6

[¶10]   The district court held a two day trial and ruled Mother was required to establish a material change of circumstances in order to warrant a change in custody or visitation and she had not met that burden.   The district court, therefore, denied her modification motion, although it also indicated a change in the terms of visitation may be in the child's best interests.   Mother appealed the district court's denial of her modification motion and Father appealed the district court's failure to rule on his counterclaim for modification of the child support obligation.   We remanded to the district court for a determination of Father's counterclaim.   The district court entered an order terminating Father's child support obligation and ordering Mother to pay Father $50 per month in support.   There was no subsequent appeal of the child support order by either party, and Father voluntarily dismissed his cross-appeal.

## STANDARD OF REVIEW

[¶11]   We review the district court's order on a petition to modify child custody for abuse of discretion.

> We will not interfere with the district court's decision regarding modification of custody absent a procedural error or a clear abuse of discretion. In determining whether the district court has abused its discretion, we must decide whether it could reasonably conclude as it did. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

*Gray v. Pavey,* 2007 WY 84, ¶ 8, 158 P.3d 667, 668 (Wyo. 2007) (citations omitted).   The issue of whether the district court erred by failing to give full faith and credit to the California order is a matter of law which we review *de novo*. *Witowski v. Roosevelt,* 2009 WY 5, ¶ 14, 199 P.3d 1072, 1076 (Wyo. 2009).

## DISCUSSION

### 1.  General Law on Modification of Custody and Visitation Awards

[¶12]   Wyoming law on modification of an order on the care, custody and visitation of children is set forth in Wyo. Stat. Ann. § 20-2-204 (LexisNexis 2013):

> (a) Either parent may petition to enforce or modify any court order regarding custody and visitation.
>    . . . .

(c) A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a). In any proceeding in which a parent seeks to modify an order concerning child custody or visitation, proof of repeated, unreasonable failure by the custodial parent to allow visitation to the other parent in violation of an order may be considered as evidence of a material change of circumstances.

[¶13] Section 20-2-204(c) mandates a two-step inquiry in deciding whether to grant a petition to modify an order.

The first step requires a showing that there has been "a material change in circumstances since the entry of the order in question." § 20–2–204(c). Because of the res judicata effect afforded custody orders, such a finding is a threshold requirement. *Hertzler v. Hertzler,* 908 P.2d 946, 949–50 (Wyo.1995). The district court does not properly acquire jurisdiction to reopen an existing custody order until there has been a showing of "a substantial or material change of circumstances which outweigh society's interest in applying the doctrine of res judicata" to a custody order. *Kreuter v. Kreuter,* 728 P.2d 1129, 1130 (Wyo.1986). In short, unless the district court finds a material change in circumstances, it cannot proceed to the second step—determining whether a modification would be in the best interests of the child.

*Hanson v. Belveal,* 2012 WY 98, ¶ 18, 280 P.3d 1186, 1193 (Wyo. 2012), quoting *In re TLJ,* 2006 WY 28, ¶ 8, 129 P.3d 874, 876 (Wyo. 2006) (some citations omitted). *See also Olsen v. Olsen,* 2013 WY 115, ¶ 9, 310 P.3d 888, 891 (Wyo. 2013).

## 2. Effect of California Order

[¶14] The California order contains a unique provision allowing modification of visitation upon a showing that it is in the child's best interest, without requiring the petitioner to show a material change of circumstances. That provision states:

27. **Final Judgment.** The orders herein are final and permanent; a material change of circumstances is required to modify these orders. However, [Mother's]

8

visitation schedule may be adjusted on request by either party, without the necessity of proving a change of circumstances, as is in the best interests of [the child] as the Court, in its discretion, may believe to be proper.

[¶15] Mother argues on appeal that the district court erred by failing to give full faith and credit to this provision of the California order and, instead, requiring her to establish a material change of circumstances occurred subsequent to entry of the order before it would conduct a best interests analysis to determine if her visitation rights should be extended. Father maintains Mother waived this argument by failing to present it to the district court. "[I]ssues raised for the first time on appeal generally will not be considered by this court unless they are jurisdictional or issues of such a fundamental nature that they must be considered." *Byrd v. Mahaffey,* 2003 WY 137, ¶ 10, 78 P.3d 671, 674 (Wyo. 2003).[4] Our case law does not define with precision what issues are of "such a fundamental nature that they must be considered." *Id.,* ¶¶ 10-11, 78 P.3d at 674. The fact that the issue is constitutional does not necessarily make it fundamental. For example, in *DG,* 916 P.2d at 997-98 and *TR,* 736 P.2d at 719-20, we refused to address issues concerning the constitutionality of the parental rights termination statutes. In contrast, we considered in *Kordus v. Montes,* 2014 WY 146, ¶ 10, 337 P.3d 1138, 1141 (Wyo. 2014), a claim that application of the statute of limitations to a minor's medical malpractice action violated the fundamental right to access to courts even though the issue was not raised at trial. In *Zupan v. Zupan,* 2010 WY 59, ¶ 34, n.4, 230 P.3d 329, 338, n.4 (Wyo. 2010) we ruled Mother's argument that the residency provision in the divorce decree violated her constitutional right to travel could be considered on appeal even though it was not raised at trial.

[¶16] Although we recognize the lack of clarity of this precedent, we do not need to specifically address whether an argument that the district court did not give full faith and credit to another state's decree is a fundamental issue because Father registered the California order in Wyoming and, in response to mother's modification petition, asked the district court repeatedly throughout the proceedings to enforce the terms of the California order. In fact, Father asked the trial court to modify the child support provision of the California order without requiring a material change in circumstances because the order specifically allowed such a change.

[¶17] It is troubling that the precise issue presented by Paragraph 27 of the California order was not presented to the district court, particularly in light of the district judge's repeated requests for the parties to provide him with authority showing that the visitation

---

[4] We have also on occasion said the plain error standard applies in cases where a constitutional issue was not raised below. *See, e.g.,* WR v. Natrona Co. Dep't of Family Servs. (In re DG), 916 P.2d 991, 998 (Wyo. 1996); *TR v. Washakie County Dep't of Public Assistance and Social Servs.,* 736 P.2d 712, 720 (Wyo. 1987).

provision of the order could be modified without showing a change of circumstances. However, as we carefully read the California order, the significance of the provision which allowed changes in visitation in the best interest of the child without a showing of material change of circumstances is clear to this Court.

[¶18] United States Const. Art. 4, § 1 states:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

Application of the principle of full faith and credit presents unique challenges in the context of child custody and support cases because the orders are often subject to future modification. Acting under its authority in Art. 4, § 1, Congress enacted 28 U.S.C. § 1738A to ensure states give full faith and credit to other states' custody orders. Section 1738A(a) provides: "[t]he appropriate authorities of every State shall enforce **according to its terms,** and shall not modify except as provided in subsections (f), (g), and (h) of this section, any custody determination or visitation determination made consistently with the provisions of this section by a court of another State." (Emphasis added.) Subsections (f), (g), and (h) of § 1738A prevent forum shopping by allowing a court to modify a custody order only when it otherwise has jurisdiction and another court does not.

[¶19] In addition, all of the states in the union have adopted some version of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which in Wyoming is codified at Wyo. Stat. Ann. §§ 20-5-201 through § 20-5-502. 24A Am. Jur. 2d, *Divorce & Separation,* § 1124 (2015). Under the UCCJEA, a child's home state makes the initial custody determination. *See* Wyo. Stat. Ann. § 20-5-301. "Home state" is defined as: [T]he state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." Section 20-5-202(a)(vii).

[¶20] In this case, California was the child's home state at the time of the initial custody determination. However, the parties and the California court recognized that the parties would be relocating to Wyoming, which would become the child's home state. As the child's home state, Wyoming had authority to modify the California order under UCCJEA. Sections 20-5-301, 20-5-303. Wyoming law typically requires a material change of circumstances to modify a custody or visitation determination. However, under the Supremacy Clause, U.S. Const. art. I, cl.2, federal law preempts state law in proper cases. Here, federal law requires we give full faith and credit to the California order as long as it is in effect. *See generally, Quenzer v. Quenzer,* 653 P.2d 295 (Wyo.

1982) (recognizing primacy of federal full faith and credit law in § 1738A over uniform state laws like the UCCJEA). Pursuant to 28 U.S.C. § 1738A, the California order has to be enforced according to its terms, and those terms, which were stipulated by the parties and approved by the California court, state that Mother's visitation rights may be altered upon a showing that it is in the best interests of the child, even though no material change of circumstances has occurred. California law specifically authorizes such provisions to promote flexibility in visitation orders. *See, e.g, In re Marriage of Lucio,* 74 Cal.Rptr.3d 803 (Cal. Ct. App. 2008), citing *In re Marriage of Brown & Yana,* 127 P.3d 28 (Cal. 2006).

[¶21] We addressed a comparable situation in *Witowski,* 2009 WY 5, 199 P.3d 1072. That case involved a Virginia child support order which required the father to pay child support until the child was twenty-three years old as long as she was a full time college student. We recognized the provision was inconsistent with Wyoming law but stated that we are required under federal law, 28 U.S.C. § 1738B, to enforce the other state's child support order in accordance with its terms until such time as it was properly modified. *Id.,* ¶¶ 20-21, 199 P.3d at 1077-78. Applying those principles here, the California order must be enforced according to its terms, including the provision which incorporates the lower standard for visitation alteration, until that term is properly modified.

[¶22] Furthermore, it is not completely unheard of in Wyoming for a court to allow minor changes to the terms of a visitation order without a showing of a material change of circumstances, particularly when the parties have agreed to allow the court to make such changes. In *Zupan,* the parties entered into a child custody agreement which alternated residential custody of the children on an annual basis. By its own terms, the agreement expired after five years. *Zupan,* ¶¶ 4-5, 230 P.3d at 332. When the agreement expired, the parties attempted mediation but it was not successful. The parties then petitioned the court to determine the future custodial arrangement for the minor children. *Id.,* ¶ 7, 230 P.3d at 332. Although the district court did not find a material change of circumstances and, therefore, left the custody arrangement the same, it did revise the visitation provisions of the agreement. *Id.,* ¶¶ 18, 26, 230 P.3d at 334, 336-37. We recognized the change of circumstances requirement on appeal, but affirmed the district court's changes to visitation as being in the best interests of the children. *Id.,* ¶ 36, 230 P.3d at 339.

[¶23] Similarly, in *Inman v. Williams,* 2009 WY 51, 205 P.3d 185 (Wyo. 2009), we affirmed, in all relevant respects, the district court's order which found no material change of circumstances had been shown for change of custody but ordered changes to the visitation provisions of the decree. Of particular interest, we recognized in *Inman* that visitation provisions may need to be flexible in order to meet the best interests of the children. *Id.,* ¶ 4, 205 P.3d at 188-89. *See also Basolo v. Basolo,* 907 P.2d 348, 355 (Wyo. 1995); *Stirrett v. Stirrett,* 35 Wyo. 206, 248 P. 1 (1926) (approving flexibility in visitation orders).

[¶24]  Under the particular circumstances presented here, including the California court's and the parties' recognition that the visitation provisions of the order may be revised to promote the child's best interest without a material change of circumstances, we conclude the district court had authority to revise those portions of the decree as appropriate.  On remand, the district court shall conduct a best interests analysis to determine if modification of the visitation provisions of the California order is warranted.  Given the contentious nature of the parties' relationship and these proceedings, perhaps consideration should be given to appointment of a guardian ad litem to represent the child's best interests.

### 3.  Material Change of Circumstances

[¶25]  Although we have already ruled that a material change of circumstances was not required for the district court to revise the visitation provisions of the California order, we still must address whether Mother established a material change of circumstances to justify modification of the custody provision of the order.  The district court concluded Mother had not met the threshold requirement because she had not proven a material change of circumstances had occurred since entry of the order.

[¶26]  Initially, Mother argues the district court erred by requiring her to meet a higher burden for showing a material change of circumstances in this case.  She directs us to the following comment made by the district court during the trial in this case:

> [G]iven the nature of this case, whatever happened in California – I mean, this is an extraordinarily unusual order from California.  I have to assume . . . there is a basis for it.  I don't want to get into that can of worms and re-litigate it, but, you know, it is what it is.
>
> So, in the context of that order and whatever behavior got to that point, material change of circumstances may be, you know, a very high burden in this case as opposed to another case.  And I think that's the law, you know, material change of circumstances is factual driven, factual specific to each case.  And this case, you know, one could argue, and I will likely find that in this case material change of circumstances is higher than some of the other cases I preside over.

[¶27]  Mother's claim has no merit; the district court's order denying her petition for modification does not indicate that it imposed a higher burden upon Mother than the law requires for showing a material change of circumstances.  It recited the correct standard

12

and, as we will explain below, it properly applied its discretion in determining that Mother had not established a material change of circumstances to modify custody. The district court's comment was likely a reference to the language in the California order, which was stipulated by Mother and Father, recognizing that Mother had previously taken the child without Father's approval to Norway and did not return until several months later after Father had obtained relief in a Hague Convention proceeding.

[¶28] Mother seems to refuse to take responsibility for her actions and, in fact, referred to the Hague Convention laws regarding international child abduction as "extremely unfair." She insisted that she had to leave with the child to escape the Father's domestic violence. However, there apparently was no finding by any international or California court that the alleged violence ever took place or, perhaps more importantly, that any such abuse justified Mother's actions. Abduction of a child by a parent is always wrong and weighs against custody and visitation privileges. *See, e.g.*, *Basolo,* 907 P.2d at 354-55. The district court correctly recognized the significance of this history in conducting its material change of circumstances analysis.

[¶29] A district court's determination of whether a material change in circumstances has occurred is primarily factual and entitled to great deference. *Hanson,* ¶ 13, 280 P.3d at 1192. We decide whether, "examining the record in the light most favorable to the successful party, the district court could have reasonably concluded as it did." *Id.,* quoting *Morris v. Morris,* 2007 WY 174, ¶ 7, 170 P.3d 86, 89 (Wyo. 2007). In order to be considered material and justify reopening the decree, the change in circumstances must affect the welfare of the child. *Hanson,* ¶ 34, 280 P.3d at 1197; *Kappen v. Kappen,* 2015 WY 3, ¶ 15, 341 P.3d 377, 382 (Wyo. 2015).

[¶30] Mother argues that a number of circumstances had changed since the California order was entered and they were sufficiently material to justify modification of the custody provision. First, she asserts that she and the child had a good relationship prior to the California order, but their relationship had deteriorated since. She directs us to a transcript from the California proceedings in which one of the visitation monitors testified that the child enjoyed visitation with Mother. The transcript was part of a packet that Father requested the district court judicially notice at trial. Mother actively contested Father's motion, and the district court refused to take judicial notice of the whole packet but told the parties that if they wanted a certain document to be considered, they should present it as evidence at the hearing, give the opposing party the opportunity to object, and the district court would rule on its admissibility. Neither party offered the transcript as evidence at trial. Given the information was not part of the trial evidence, the district court certainly cannot be said to have abused its discretion by failing to consider it.

[¶31] Next, Mother asserts that Father's and Stepmother's efforts to alienate the child from her amount to a material change of circumstances. She claims the evidence showed that Father and Stepmother interfered with the Skype communications before Mother

13

moved to Wyoming and improperly required that she provide various documentation, such as copies of her driver's license and automobile insurance and proof of residency and immigration status, before allowing her to exercise visitation in Wyoming. Father also contacted the United States Department of Immigration to have Mother deported. The district court properly ruled this evidence was insufficient to show a material change of circumstances because Father's actions were not ongoing at the time of trial. Remote and isolated instances of conduct do not usually satisfy the requirements for establishing a material change of circumstances. *Hanson,* ¶ 43, 280 P.3d at 1199.

[¶32] Mother also directs us to evidence that the child began to refer to Stepmother as "mommy" and Mother as "Heidi," as evidence of Father's efforts to alienate her from the child. Confusing a child about the identity or position of the non-custodial parent is not appropriate and could, in proper circumstances, establish parental alienation to the point of being a material change in circumstances. *Gaines v. Doby,* 773 P.2d 442, 446 (Wyo. 1989). However, the evidence did not establish that Father improperly encouraged the child to view Stepmother as her primary maternal figure. Stepmother testified they did not inappropriately influence the child in that manner. Instead, she testified that the child began addressing Stepmother as "mommy" because the child's stepbrother did. This was a reasonable explanation because, when the child returned from Norway, she did not speak English and the stepbrother helped her learn the language.

[¶33] The district court made the following findings regarding Mother's parental alienation claims:

> 54. Mother did present some evidence that Father and Stepmother have attempted to alienate the child from her. They have repeatedly informed [the child] that she was kidnapped as an infant and have given the child "kidnapping training" to make sure that she knows what to do if she is ever re-abducted. This has made the child fearful and anxious to be left alone with Mother. Father has also tried to have Mother deported.
>
> 55. Mother likewise has engaged in some behavior that could alienate the child from Father. She has repeatedly asked the child if Father ever says or does anything to hurt the child and consistently quizzes the child about the way she is treated in Father's house and about Father's lifestyle. Her behavior borders on coaching the child into thinking she is being abused by Father.
>
> 56. Mother did present some evidence that Father has engaged in some conduct that makes the visitation exchanges

contentious. However, Father also presented evidence that Mother has also engaged in behavior that contributes to the conflict at these exchanges, including secretly videotaping the child and questioning her about Father's lifestyle.

[¶34] The trial evidence included the parties' testimony and videotapes of various interactions between the parties and the child. As the district court noted, the evidence shows poor judgment by both parties and attempts by each to convince the child that the other parent has mistreated her. The district court's findings are supported by the evidence and Mother does not demonstrate that they are incorrect or amount to an abuse of discretion. Instead, Mother's argument focuses on her evidence and perspective on the facts, which is actually the opposite of our standard of review requiring us to give the facts all reasonable inferences to support the prevailing party's view. *See Willis v. Davis,* 2013 WY 44, ¶ 7, 299 P.3d 88, 91 (Wyo. 2013). The district court aptly summed up the situation with this finding:

> 57. While the behavior of both parties has sometimes been appalling, and is definitely not in the best interests of the child, it does not amount to a material change in circumstances. These parties have had an antagonistic relationship since Mother took the child to Norway in 2008. If anything, their relationship and behavior has improved with the assistance of Ms. Smidt.

[¶35] As the district court recognized, the parties' behavior toward one another was not a new development or, in other words, a material change of circumstances. The California order contains the following provision:

> 24. **No Discussion in Presence of Minor Child.** The parties shall not discuss the other parent or the child custody litigation and proceedings with the minor child or with another within the hearing distance of the minor child. Neither parent shall make derogatory remarks about the other parent or the parent's family in the presence of the minor child or within the hearing distance of the minor child.

The fact that this provision was included in the California order shows that the acrimony between the parties was long standing and pervasive.

[¶36] Mother also argues a material change of circumstances occurred because there was no longer any risk she would abscond with the child. Mother asserts that the protections in place, including the $50,000 bond, her inability to access the child's passports, and Mother's status as a permanent resident of the United States, eliminate any concern about

15

a future wrongful taking of the child. The district court specifically found it was not convinced Mother was no longer a flight risk. The evidence supports that finding. Mother has had only sporadic employment since moving to Sheridan, her primary means of support appears to be gifts or loans from her parents in Norway, she does not own any real property in Sheridan, and there was no evidence that she has any family or other support network in Sheridan. It appears that her only tie to the community is the child. Given her history of illegally removing the child from the country and keeping her from Father and Mother's lack of ties to the Sheridan community, the district court properly rejected Mother's claim that she was no longer a flight risk.[5]

[¶37] Mother also argues that she established a material change of circumstances based upon violence in Father's household. As we stated earlier, Mother asserted that Father's abuse of her prompted her to flee with the child to Norway, but that allegation was never accepted by any court. She claims, however, there is evidence of on-going abuse in Father's home and that amounts to a material change in circumstances. The trial evidence included testimony and a police report about an instance where Father hit Stepmother on the head with his open hand for using his work computer. Father was arrested for "unlawful touch," but the charges were dropped. In addition, Father and Stepmother had disciplined the children by requiring them to take cold showers and/or eat hot sauce.

[¶38] Ms. Smidt addressed the treatment of the children during therapy and with her list of rules. She told Father and Stepmother that their disciplinary methods were improper and, in her opinion, constituted abuse and directed them to desist. There is no indication they failed to follow her directions. Moreover, the Department of Family Services investigated the incidents and concluded the children had not been abused within the meaning of the law. *See Willis,* ¶¶ 16-17, 299 P.3d at 93 (no material change in circumstances created by stepbrother's alleged physical abuse of children because the allegations were not substantiated by the police and custodial parent took steps to assure the stepbrother was not left alone with the children). With regard to the spousal abuse, we note that it was a single instance that was quickly dismissed by the county prosecutor.

[¶39] Household abuse is always improper and contrary to the best interests of the children. Section 20-2-201(c) states:

> (c) The court shall consider evidence of spousal abuse or child abuse as being contrary to the best interest of the children. If the court finds that family violence has occurred, the court shall make arrangements for visitation that best

---

[5] This ruling also supports the district court's refusal to reduce or eliminate the bond requirement. *See Stonham v. Widiastuti,* 2003 WY 157, ¶ 28, 79 P.3d 1188, 1197 (Wyo. 2003) (district court has discretion to impose a bond requirement to ensure parent complies with custody and visitation portions of a decree).

protects the children and the abused spouse from further harm.

While the incidents of violence and improper discipline in Father's household give us pause, we generally perceive them to be isolated and remote rather than on-going. Consequently, we cannot say the district court abused its discretion by failing to find they amounted to a material change of circumstances. *See, e.g., Hanson,* ¶ 47, 280 P.3d at 1200 (isolated or remote actions that were not on-going did not justify a change of custody).

[¶40]  Although their precise arguments may have changed over time, in large part, the parties' complaints and positions are the same as they were at the time of the California order. Mother claims Father is abusive, and Father claims Mother is a flight risk. We rejected a similar type of argument in *Hanson,* ¶ 48, 280 P.3d at 1200.

> Much of Father's case focused on proving he was a better parent than Mother. His arguments would have been appropriate in an initial custody determination. However, the standard is different in a modification proceeding because changes in custody are not favored and should not be granted except in clear cases. *See, e.g., Leitner v. Lonabaugh,* 402 P.2d 713, 718–19 (Wyo.1965). As we said in *CLH,* ¶ 9, 129 P.3d at 877: "Under the principles of res judicata, a court does not have the discretion to reopen a custody order simply because, looking at the best interests of the child, it believes it can make a better decision than was made in the prior custody order." Father, thus, had the burden of establishing a material change of circumstances before the best interest analysis was appropriate. *Id.,* ¶ 11, 129 P.3d at 877. *See also, Selvey v. Selvey,* 2004 WY 166, ¶ 16, 102 P.3d 210, 214–15 (Wyo.2004). On this record, we hold the district court could have reasonably concluded Father failed to establish a material change of circumstances. Consequently, it did not abuse its discretion by denying Father's request for a change of custody.

*Id.,* quoting *Morris,* ¶ 27, 170 P.3d at 93. *See also Kappen,* ¶¶ 30-32, 341 P.3d at 385-86.

[¶41]  By the time of the trial, the parties' interactions, the visitation exchanges and the child's behavior during visitation had improved considerably. The district court attributed these changes largely to Ms. Smidt's assistance. Ms. Smidt testified that her rules were intended to address the child's anxiety caused by the parties' interactions with

one another and the child. Her counseling had facilitated better communication and behavior by the parties and the child.

[¶42] The district court properly recognized the improved conditions. We have said that in determining whether there has been a material change of circumstances, the court may consider the situation at the time of trial, rather than at the time of the petition. *See Hanson,* ¶¶ 35-36, 280 P.3d at 1197-98 (district court properly ignored Father's contention that Mother's relocation out of state was a material change of circumstances since she had moved back to Wyoming by the time of the trial). Given stability in the child's life is of utmost importance and custody changes are not favored and should only be granted in clear cases, we conclude the district court did not abuse its discretion by ruling that Mother had not proven a material change of circumstances to justify reopening the California custody order. *See Kappen,* ¶ 12, 341 P.3d at 382.

[¶43] Affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.