# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 99

### APRIL TERM, A.D. 2020

### July 29, 2020

IN THE MATTER OF THE PHYLLIS V.
MCDILL REVOCABLE TRUST:

THOMAS P. MCDILL, JR.,

Appellant
(Respondent),

v.                                                          S-19-0231

MICHAEL G. MCDILL,

Appellee
(Petitioner).

*Appeal from the District Court of Laramie County*
The Honorable Peter H. Froelicher, Judge

*Representing Appellant:*
    *Pro se.*

*Representing Appellee:*
    Brianne K. Sherman of Long Reimer Winegar LLP, Cheyenne, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     Michael G. McDill, as Trustee of the Fourth Amendment to and Restatement of the Phyllis V. McDill Revocable Trust, filed a Petition for Instructions with the district court seeking confirmation that the Trust's no contest clause prohibited Thomas P. McDill, Jr., from taking under the Trust.[1]  Michael eventually filed a motion for summary judgment, which the district court granted.  Thomas appealed.  The district court's order granting Michael's summary judgment motion did not resolve all outstanding issues before it.  As a result, it is not an appealable order under Rule 1.05 of the Wyoming Rules of Appellate Procedure (W.R.A.P.) and we dismiss this appeal for want of jurisdiction.  However, we grant Michael's request for his attorney fees and costs under W.R.A.P. 1.03 and 10.05.

## ISSUES

[¶2]     The dispositive issues are:

1. Is the district court's order granting Michael's motion for summary judgment an appealable order under W.R.A.P. 1.05?

2. Is Michael entitled to his attorney fees and costs under W.R.A.P. 1.03 and 10.05?

## FACTS

[¶3]     In 2009, Phyllis created the Phyllis V. McDill Revocable Trust.  She named herself as Trustee and her son, Michael, and her daughter, Teresa, as successor trustees.  Article 5 of the Trust directed that unless Phyllis designates otherwise, "the Trustee may sell any of [Phyllis]'s tangible personal property that the Trustee may determine [she] would not wish to have preserved for [her] descendants and shall add the proceeds of any such sale to the Trust Fund.  [Phyllis] gives the balance of such property to [her] descendants who survive [her], per stirpes."  Article 6 gave each of Phyllis's children, Michael, Teresa, and Thomas, $100,000 upon her death if they are living and, if not, to their surviving descendants.  The remaining trust property was to be divided equally among her surviving grandchildren.

[¶4]     Phyllis amended the Trust four times between May 2014 and December 2016.  The First Amendment appointed Phyllis and Michael as co-trustees.  The Second Amendment appointed Phyllis, Michael, and Thomas as co-trustees and allowed any two of them to act together, without the consent of the third.  It required that an accounting and statement of trust assets be provided to Phyllis annually or as requested, but not more than twice a year, "in order to provide adequate checks and balances."  It also provided for Thomas to inherit Phyllis's house and property on Moreland Avenue in Cheyenne.  The Third Amendment

---

[1] Because the parties share the same surname, we refer to them by their first names.

1

revoked the Second Amendment and adopted, ratified, and confirmed the original Trust and First Amendment thereto. The Fourth Amendment essentially reinstated the original Trust and First Amendment of the Trust, but also added a no contest clause in Article 18. Section 18.1 states:

> 18.1. **Effect of Attempted Contest.** In the event that any person (1) directly or indirectly contests or attacks this Agreement or any trust or beneficial interest created hereunder or under the Settlor's Will, or (2) conspires with or voluntarily assists anyone associated with any such contest or attack, singly or in conjunction with any other person(s), then the Settlor specifically disinherits such person and such person's descendants; all interests and properties given to or created for the benefit of such person and such person's descendants, directly or in trust, under this Agreement, shall be forfeited, and such property shall be disposed [of] as if such person and their descendants had predeceased the Settlor.

[¶5] Section 18.2 describes the acts constituting a "contest" for purposes of Article 18. Among other things, it includes a person who "unsuccessfully contests or, in any manner, attacks or seeks to impair or invalidate any provision of [the Trust] . . . on any grounds whatsoever." Section 18.5 requires the Trustee to provide notice of his intent to enforce the no-contest clause and gives the person an opportunity to dismiss or withdraw the contest. It provides:

> 18.5. **Withdrawal of Contest.** Notwithstanding the foregoing, the provisions of this Article shall not apply unless and until the Trustee has given written notice of such fiduciary's intent to enforce the foregoing provisions against a particular person to such person or such person's authorized representative, and give[] such person the opportunity to voluntarily dismiss or withdraw any petition or action that such fiduciary deems to constitute a contest or to otherwise cooperate in defending or terminating a contest. If such person dismisses or withdraws such petition, contest or other claim or takes other actions requested by such fiduciary within thirty (30) business days after receipt of such notice, then this Article shall not apply with respect to such petition or contest or other claim; provided that such fiduciary shall have the broadest permissible discretion in terms of insisting on a particular form or scope of dismissal or withdrawal in order to ensure that the petition, contest or other claim will not reoccur.

2

[¶6]    In December 2017, Phyllis died, making the Trust irrevocable.  On January 26, 2018, Michael, acting as Trustee, sent a "Statutory Notice to Qualified Beneficiaries" pursuant to Wyo. Stat. Ann. § 4-10-813(b) (LexisNexis 2019).  The notice informed the beneficiaries they had 120 days from receipt of the notice in which to "commence a judicial proceeding to contest the validity of the Trust."  *See* Wyo. Stat. Ann. § 4-10-604(a) (LexisNexis 2019).  The notice was delivered to Thomas on February 2, 2018, giving him until June 4, 2018, to contest the Trust's validity.

[¶7]    On May 15, 2018, Thomas filed an "Original Petition and Action for Equitable Relief" in his home state of Texas (Texas Lawsuit) against Michael and various attorneys and law firms claiming the Third and Fourth Amendments to the Trust should be set aside due to duress and undue influence.  He sought (1) enforcement of the original Trust and the First and Second Amendments; (2) quiet title to him in the Moreland Avenue property; and (3) an order requiring Michael to make a full accounting of Trust assets.

[¶8]    Approximately two months later, in July 2018, Michael sent Thomas a "Notice of Intent to Enforce No Contest Clause."  The letter stated the Texas Lawsuit constituted a contest under Article 18 of the Trust and gave Thomas thirty business days to, *inter alia*, voluntarily dismiss or withdraw the Texas Lawsuit with prejudice to avoid the effects of Article 18.  Thomas did not dismiss or withdraw the petition.  Instead, on February 15, 2019, the Texas trial court dismissed the petition.  Thomas appealed from that dismissal and, as of August 23, 2019, the appeal was still pending.

[¶9]    In the meantime, Michael, as Trustee, filed a Petition for Instructions with the district court in Wyoming.  He sought confirmation that Thomas's filing of the Texas Lawsuit triggered the Trust's no contest clause and because Thomas had failed to dismiss or otherwise withdraw the lawsuit as demanded, he was thereby prohibited from taking under the Trust.  Michael also sought confirmation of his proposed distribution of Trust assets, which divided Thomas's $100,000 inheritance between Michael and Teresa.  Thomas and his daughter, Shelly Springer, each filed a response to the Petition for Instructions.[2]  In his *pro se* response, Thomas asserted Michael had violated his fiduciary responsibilities as Trustee; the First, Third, and Fourth Amendments to the Trust were the product of undue influence;[3] and the application of the no contest clause was contingent on the outcome of the Texas Lawsuit.  He later filed an Amended Response, also *pro se*, asking that Michael be removed as Trustee for (1) failing to provide an accounting under § 4-10-813; (2) thwarting Thomas's efforts to obtain such an accounting under Wyo. Stat. Ann. § 4-10-1001(v-viii) (LexisNexis 2019); (3) providing false financial statements from a registered stockbroker; (4) deleting the accounting requirements established in the Second

---

[2] Other than filing a response to the Petition for Instructions, it does not appear that Ms. Springer participated in the proceedings below.

[3] Thomas's allegation in this case that the First Amendment to the Trust is invalid is inconsistent with his Texas Lawsuit in which he sought enforcement of the original Trust and the First and Second Amendments. Our dismissal of this appeal for lack of jurisdiction renders it unnecessary to resolve the discrepancy.

3

Amendment to the Trust; (5) committing fraud by writing a check on the Trust's checking account to pay for Phyllis's legal representation while she was living and then cancelling the check a few days later; (6) violating the duty of loyalty by adding language in the Fourth Amendment to the Trust attempting to disinherit Thomas and adding $50,000 in inheritance benefits for himself; and (7) failing to provide the Trust documents to Phyllis's and the beneficiaries' attorney as required by § 4-10-813(b)(i).

[¶10]  Michael responded to Thomas's Amended Response, denying all allegations and seeking its dismissal with prejudice.  He also asserted several affirmative defenses, including that Thomas had failed to state a claim upon which relief may be granted and his claims were barred by the doctrine of unclean hands.  Michael also filed a motion for summary judgment.  Thomas moved for an extension of time to submit his response to Michael's summary judgment motion.  The district court granted Thomas until July 22, 2019, in which to file his response.  Three days before the deadline, Thomas requested another extension of time in which to file his response.  The district court denied that request on August 2, 2019.  Nevertheless, on August 9, 2019, Thomas filed a response to the summary judgment motion.

[¶11]  Three days later, the district court granted Michael's Motion for Summary Judgment and his Petition for Instructions.  It concluded:

> In filing the Texas Lawsuit, and then failing to withdraw or dismiss it, [Thomas] violated the plain and ordinary meaning of the unambiguous terms of Article 18 of the Trust. Pursuant to his violation of these unambiguous terms, the Court must give effect [to] the Settlor's intent, which is evidenced by the plain language of the Trust.  The court concludes [Thomas] is, therefore, disinherited from the Trust, and his descendants are disinherited from the Trust but only with respect to the bequests made to [him] under Article 5 and Article 6 of the Trust.

The district court denied Thomas's subsequent motion to reconsider.  This appeal followed.

## DISCUSSION

1. *Is the district court's order granting Michael's motion for summary judgment an appealable order under W.R.A.P. 1.05?*

4

[¶12] Thomas challenges the district court's order granting Michael's motion for summary judgment.[4] However, he failed to designate the summary judgment motion as part of the record on appeal. Under W.R.A.P. 3.05(b), an appellant is required to "file with the clerk of the trial court and serve on all parties and the appellate court clerk a designation for transmission of all parts of the record, without unnecessary duplication, to which appellant intends to direct the appellate court in its brief." This includes all portions of the record necessary for us to make a decision. *Orcutt v. Shober Inv., Inc.,* 2003 WY 60, ¶ 9, 69 P.3d 386, 389 (Wyo. 2003) (citing *Parsons v. Parsons,* 2001 WY 62, ¶ 11, 27 P.3d 270, 272-73 (Wyo. 2001), and *G.C.I., Inc. v. Haught,* 7 P.3d 906, 911 (Wyo. 2000)). A "failure to designate the record on appeal constitutes a clear failure to comply with the Wyoming Rules of Appellate Procedure which is a separate ground for 'such action as the appellate court deems appropriate, including but not limited to: refusal to consider the offending party's contentions; assessment of costs; [monetary sanctions; award of attorney fees;] dismissal; and affirmance.'" *Orcutt,* ¶ 11, 69 P.3d at 390 (quoting W.R.A.P. 1.03) (other quotations omitted). As explained below, we conclude Michael is entitled to his attorney fees and costs due in part to Thomas's failure to designate an appropriate record. We need not decide, however, whether dismissal of this appeal or affirmance is also warranted for such failure because there is a more fundamental problem—our jurisdiction. As Thomas argues (albeit ironically as he is the one who filed the appeal), this appeal is not properly before us because there is no final appealable order.

[¶13] We have jurisdiction over an appeal from "[a] judgment or appealable order entered by a district court." W.R.A.P. 1.04(a). *See also, Matter of Estate of Inman*, 2016 WY 101, ¶ 9, 382 P.3d 67, 69 (Wyo. 2016) ("[Our] jurisdiction is limited to appeals from final appealable orders.") (citing *McLean v. Hyland Enter., Inc.*, 2001 WY 111, ¶¶ 19-20, 34 P.3d 1262, 1268 (Wyo. 2001)). An "appealable order" is "[a]n order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment[.]" W.R.A.P. 1.05(a). "We have held that an appealable order under Rule 1.05(a) has 'three necessary characteristics . . . . It must affect a substantial right, determine the merits of the controversy, *and resolve all outstanding issues.*'" *In re E.R.C.K.*, 2013 WY 160, ¶ 28, 314 P.3d 1170, 1176 (Wyo. 2013) (emphasis added) (quoting *In re KRA*, 2004 WY 18, ¶ 10, 85 P.3d 432, 436 (Wyo. 2004)). *See also, Estate of McLean ex rel. Hall v. Benson*, 2003 WY 78, ¶ 8, 71 P.3d 750, 753 (Wyo. 2003) ("To be final, the order must determine all liabilities of all parties and leave nothing for future consideration.") (quotations omitted). "The purpose of this general rule is to avoid fragmentary appeals and decisions made in a piecemeal fashion." *Id.*

---

[4] Thomas also challenges the district court's order denying his second motion for extension of time to respond to Michael's summary judgment motion and the court's order denying his motion to reconsider. However, he did not identify the former order in his notice of appeal or designate it as part of the record on appeal. In any event, these orders are not appealable orders under Rule 1.05 because they, like the district court's order granting Michael's summary judgment motion, failed to resolve all outstanding issues.

[¶14]   The district court's order granting Michael's motion for summary judgment did not resolve all outstanding issues as it did not resolve the counterclaims raised in Thomas's Amended Response which alleged various wrongdoings by Michael, as Trustee, and sought his removal as Trustee.   While Thomas did not specifically designate these claims as counterclaims, we construe pleadings "so as to do justice."   W.R.C.P. 8(e).   *See also*, W.R.C.P. 8 (c)(2) ("*Mistaken Designation.*  If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."); *McCarley v. McCarley*, 221 S.E.2d 490, 494 (N.C. 1976) ("[F]ailure to label the affirmative allegations as a counterclaim is, of course, not fatal if they sufficiently support a claim for relief.") (quotations omitted).   "Counterclaims differ from affirmative defenses in that counterclaims seek affirmative relief whereas affirmative defenses attempt to defeat the cause of action."  *JPMorgan Chase Bank, N.A. v. East-West Logistics, L.L.C.*, 2014 Ill. App. (1st) 121111, ¶ 54, 9 N.E.3d 104, 118-19 (Ill. App. Ct. 2014) (citing *Dudek, Inc. v. Shred Pax Corp.*, 254 Ill. App. 3d 862, 871, 626 N.E.2d 1204, 1211 (Ill. App. Ct. 1993)).   Because Thomas's Amended Response sought affirmative relief, as opposed to merely attempting to defeat Michael's cause of action, it raised counterclaims, not affirmative defenses.   And because the district court's order granting Michael's motion for summary judgment did not resolve those counterclaims, it is not an appealable order.  *See CIBC Nat'l Tr. Co. v. Dominick*, 2020 WY 56, ¶ 8, 462 P.3d 452, 456 (Wyo. 2020) (summary judgment in favor of a plaintiff which does not resolve a defendant's counterclaim does not entirely determine the action and is not a final appealable order).

[¶15]   Michael argues the district court's order granting his motion for summary judgment is a final order.   According to him, "[t]his case is not about any claims of undue influence, constructive fraud, or any other alleged violation of Wyoming law on the part of the Trustee, as no such claims or action were ever properly brought against the Trustee."   Yet Michael acknowledges in his brief that Thomas's Amended Response requested his removal as Trustee and "made false and baseless accusations against [him] for breach of fiduciary duties and other wrongdoing . . . ."   Moreover, he answered Thomas's Amended Response as if it were stating counterclaims, including raising affirmative defenses to them. While he did so "in an abundance of caution," he nevertheless apparently recognized the Amended Response could be read to state affirmative claims for relief.   He was right.

[¶16]   The district court's order granting Michael's summary judgment motion is not an appealable order under W.R.A.P. 1.05.  We dismiss this appeal for lack of jurisdiction.

### 2.  *Is Michael entitled to his attorney fees and costs under W.R.A.P. 1.03 and 10.05?*

[¶17]   Michael claims Thomas's appeal lacks cogent legal argument and his brief fails to adhere to our rules.   As a result, he requests his attorney fees and costs as sanctions under W.R.A.P. 1.03 and 10.05.

6

[¶18] As stated above, Rule 1.03(a) states a failure to comply with our rules of appellate procedure may result in an "assessment of costs; monetary sanctions; [and an] award of attorney fees . . . ." Rule 10.05(b) also allows us to award "a reasonable amount for attorneys' fees and damages to the appellee" if we certify "there was no reasonable cause for the appeal." Additionally, "we award sanctions when the appellant's brief 'lacks cogent argument, there is an absence of pertinent legal authority to support the issues, or there is a failure to adequately cite to the record.'" *Golden v. Guion*, 2016 WY 54, ¶ 32, 375 P.3d 719, 727 (Wyo. 2016) (quoting *Carbaugh v. Nichols*, 2014 WY 2, ¶ 23, 315 P.3d 1175, 1180 (Wyo. 2014)) (other citation omitted).

[¶19] Michael is entitled to recover the reasonable attorney fees and costs he incurred in responding to this appeal. Thomas filed this appeal yet knew his counterclaims remained unresolved and rendered the district court's order granting Michael's summary judgment motion a non-appealable order. Indeed, it was he, not Michael, who argued this appeal (his appeal) was not properly before us due to his outstanding counterclaims. While he filed a motion to reconsider the district court's orders granting summary judgment and denying his second request for an extension of time, he did not mention in his motion to reconsider that the court had failed to address his counterclaims. Moreover, even if the district court's order granting Michael's motion for summary judgment was appealable, Thomas failed to designate Michael's summary judgment motion as part of the record on appeal. *See Wood v. Wood*, 2018 WY 93, ¶¶ 10-11, 424 P.3d 247, 249-50 (Wyo. 2018) (addressing, among other things, the appellant's inappropriate designation of the appellate record in determining whether to award sanctions under Rules 1.03 and 10.05 even though the order being appealed was not an appealable order). He also wanted to challenge the district court's order denying his second request for an extension of time to respond to Michael's summary judgment motion but failed to designate that order. *See supra* n.4. Although Thomas's pro se status entitles him to "'a certain leniency' from the more stringent standards accorded formal pleadings drafted by lawyers; . . . the administration of justice requires reasonable adherence to procedural rules and requirements of the court." *Wood*, ¶ 11, 424 P.3d at 250 (quoting *Osborn v. Painter*, 909 P.2d 960, 965 (Wyo. 1996)) (other citation omitted).

[¶20] Michael shall submit a statement of attorney fees and costs to this Court for our review. We will determine the proper amount to be awarded after receiving his submission.

## CONCLUSION

[¶21] Because the district court's order granting Michael's summary judgment motion did not resolve Thomas's counterclaims, it is not an appealable order. We dismiss this appeal for lack of jurisdiction. We grant Michael's request for his attorney fees and costs under Rules 1.03 and 10.05.