# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 40

### OCTOBER TERM, A.D. 2021

### March 22, 2022

IN THE MATTER OF THE PHYLLIS
V. McDILL REVOCABLE TRUST:

THOMAS P. McDILL, JR.,

Appellant
(Respondent),

v.                                                        S-21-0113

MICHAEL G. McDILL, in his capacity
as trustee of the Phyllis McDill
Revocable Trust,

Appellee
(Petitioner).

*Appeal from the District Court of Laramie County*
The Honorable Peter H. Froelicher, Judge

*Representing Appellant:*
    Bernard Q. Phelan, Cheyenne, Wyoming.

*Representing Appellee:*
    Brianne K. Sherman and Kaylee A. Harmon of Long Reimer Winegar LLP,
    Cheyenne, Wyoming.  Argument by Ms. Harmon.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*\*Justice Davis retired from judicial office effective January 16, 2022, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2021), he was reassigned to act on this matter on January 18, 2022.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KAUTZ, Justice.**

[¶1]    Michael G. McDill, as trustee of his deceased mother's trust, filed a Petition for Instructions asking the district court to confirm, *inter alia*, that his brother, Thomas P. McDill, Jr., was excluded as a beneficiary under the trust because he violated its no-contest provision.  In response, Thomas asserted various counterclaims and requested Michael be removed as trustee.[1]  Michael eventually filed a motion for summary judgment on the Petition for Instructions and a motion to dismiss Thomas's counterclaims.  Thomas, in turn, sought to amend his response to the Petition to clarify his counterclaims and to add affirmative defenses.  The district court granted summary judgment to Michael, dismissed Thomas's counterclaims, and denied Thomas's motion to amend.  We affirm.

## ISSUES

[¶2]    Thomas raises five issues which we re-state as three:

        1.      Did the district court err by granting summary judgment to Michael on his claim that Thomas was disinherited from taking under the trust because he violated its no-contest provision?

        2.      Did the district court err by dismissing Thomas's counterclaims for lack of standing and as barred by the applicable statute of limitations?

        3.      Did the district court abuse its discretion by denying Thomas's motion for leave to amend his response to the Petition for Instructions?

## FACTS

[¶3]    On April 22, 2009, Phyllis V. McDill created the "Phyllis V. McDill Revocable Trust."  At that time, she had three adult children—Thomas, Michael, and Teresa L. McDill—and six grandchildren.  She named herself as trustee and Michael and Teresa as successor co-trustees.  The trust directed that, upon Phyllis's death, her real property "be sold at the best available price . . . and the proceeds from such sale or sales be made part of the Trust Fund."  It gave the trustee the authority to "sell any of [Phyllis]'s tangible personal property that the [t]rustee . . . determine[s] [she] would not wish to have preserved for [her] descendants and . . . add the proceeds of any such sale to the Trust Fund."  Any tangible personal property not so sold was to be distributed "to [Phyllis]'s descendants who survive [her], per stirpes."  The trust gave $100,000 each to Thomas, Michael, and Teresa if they were living and, if not, to their surviving descendants, per stirpes.  The remaining

---

[1] Because the parties and other relevant actors share the same surname, we will refer to them by their first names.

1

balance of the Trust Fund was to be divided equally among Phyllis's surviving grandchildren.

[¶4]   Five years later, in May 2014, Phyllis amended the trust (first amendment) to name herself and Michael as co-trustees.  In June 2016, Phyllis again amended the trust (second amendment).  This time, she named herself, Michael, and Thomas as co-trustees, added a provision requiring an annual accounting, and amended the trust's real property provisions to give Thomas her house and property located on Moreland Avenue in Cheyenne after her death.  Several months later, in September 2016, Phyllis executed a third amendment to the trust which revoked the second amendment and "adopt[ed], ratif[ied], and confirm[ed]" the original trust and first amendment thereto.

[¶5]   On December 15, 2016,  Phyllis amended the trust for the fourth and final time.  The fourth amendment re-stated the terms of the original trust and first amendment and added a no-contest provision, which stated:

> **Effect of Attempted Contest.**  In the event that any person (1) directly or indirectly contests or attacks this [trust] or any trust or beneficial interest created hereunder . . . or (2) conspires with or voluntarily assists anyone associated with any such contest or attack, singly or in conjunction with any other person(s), then the Settlor specifically disinherits such person and such person's descendants; all interests and properties given to or created for the benefit of such person and such person's descendants, directly or in trust, under this [trust], shall be forfeited, and such property shall be disposed [of] as if such person and their descendants had predeceased the Settlor.

The trust outlined "the acts" constituting a "contest" for purposes of the no-contest provision.  Those "acts" included a "[d]irect or [i]ndirect contest" in which a "person unsuccessfully contests or, in any manner, attacks or seeks to impair or invalidate any provision of [the trust] . . . on any grounds whatsoever."  The trust also required the trustee to provide notice of his intent to enforce the no-contest provision and give the person contesting the trust an opportunity to dismiss or withdraw the contest to avoid disinheritance:

> **Withdrawal of Contest**.   Notwithstanding the foregoing, the [no-contest] provision[] . . . shall not apply unless and until the [t]rustee has given written notice of such fiduciary's intent to enforce the foregoing provision[] against a particular person to such person . . . and give[s] such person the opportunity to voluntarily dismiss or withdraw any petition

2

or action that such fiduciary deems to constitute a contest or to otherwise cooperate in defending or terminating a contest. If such person dismisses or withdraws such petition, contest or other claim or takes other actions requested by such fiduciary within thirty (30) business days after receipt of such notice, then th[e] [no-contest provision] shall not apply with respect to such petition or contest or other claim; provided that such fiduciary shall have the broadest permissible discretion in terms of insisting on a particular form or scope of dismissal or withdrawal in order to ensure that the petition, contest or other claim will not reoccur.

[¶6]    On December 31, 2017, Phyllis died and the trust became irrevocable. On January 26, 2018, Michael, acting as the sole trustee, notified the trust's beneficiaries, including Thomas, that they had 120 days from receipt of the notice in which to "commence a judicial proceeding to contest the validity of the [t]rust" (hereinafter "statutory notice"). *See* Wyo. Stat. Ann. § 4-10-604(a)(ii) (LexisNexis 2021). The United States Postal Service (USPS) delivered the notice, with the trust attached, to Thomas's address in Austin, Texas, on February 2, 2018, giving him until June 4, 2018, to contest the trust's validity.

[¶7]    On May 15, 2018, Thomas filed an "Original Petition and Action for Equitable Relief" in the District Court of the 459th Judicial District of Travis County, Texas (Texas Lawsuit) against Michael and various attorneys who represented Michael. He alleged the third and fourth amendments to the trust were invalid because Phyllis executed them under duress and was unduly influenced by Michael and the other defendants. In addition to requesting that the Texas court invalidate the third and fourth amendments, Thomas sought an order quieting title to the Moreland Avenue property in him and an order requiring Michael to make a full accounting of trust assets as required by the second amendment to the trust.

[¶8]    Two months later, Michael sent Thomas notice of his intent to enforce the trust's no-contest provision and informed him he had 30 business days to voluntarily dismiss or withdraw the Texas Lawsuit with prejudice to avoid being disinherited. Thomas did not dismiss or withdraw the Texas Lawsuit. On February 14, 2019, the Texas district court dismissed the lawsuit against Michael and his attorneys who were not residents of Texas for lack of personal jurisdiction. With respect to the remaining defendants who were Texas residents, it dismissed the claims against them under Texas's attorney-immunity doctrine. The Texas Court of Appeals affirmed the dismissal. *See McDill v. McDill*, No. 03-19-00162-CV, 2020 WL 4726634, *1 (Tex. Ct. App. July 30, 2020).

[¶9]    In the meantime, Michael, acting as trustee, filed a Petition for Instructions (Petition) with the Laramie County district court seeking confirmation that (1) Thomas's filing of the Texas Lawsuit triggered the no-contest provision; (2) Thomas had received

3

notice of Michael's intent to enforce the trust's no-contest provision; and (3) Thomas was prohibited from taking under the trust because Thomas had failed to dismiss or otherwise withdraw the Texas Lawsuit. He also sought confirmation of his proposed distribution of the trust assets which called for Thomas to receive nothing and for he and Teresa to split the $100,000 Thomas would have received had he not violated the no-contest provision.

[¶10] Thomas responded to the Petition asserting Michael had violated his fiduciary duties as trustee; the first, third, and fourth amendments to the trust were the product of undue influence; and application of the no-contest provision was contingent on the outcome of the Texas Lawsuit. He subsequently filed an amended response requesting Michael be removed as trustee for breach of trust based on his violations of the duty of loyalty, Wyo. Stat. Ann. § 4-10-802 (LexisNexis 2021), and the duty to inform and report, Wyo. Stat. Ann. § 4-10-813 (LexisNexis 2021). He also faulted Michael for urging Phyllis to add language in the third and fourth amendments to the trust which disinherited Thomas, eliminated the accounting requirements of § 4-10-813, and relieved Michael of wrongdoing in violation of Wyo. Stat. Ann. § 4-10-1008 (LexisNexis 2021).

[¶11] Michael filed a motion for summary judgment arguing Thomas had forfeited his status as a trust beneficiary under the no-contest provision by filing the Texas Lawsuit. As a result, he sought confirmation of his proposed plan of distribution under which Thomas would receive nothing and he and Teresa would split the $100,000 Thomas would have received had he not violated the no-contest provision. Thomas sought a 20-day extension of time to respond to Michael's summary judgment motion. The district court granted the request, giving Thomas until July 22, 2019, to file his response. Three days before the deadline, Thomas requested an additional 20 days in which to file his response. The district court denied this request. Thomas finally filed a response to the summary judgment motion on August 9, 2019, but it was deemed untimely. The district court granted Michael's summary judgment motion, concluding Thomas was disinherited from taking under the trust because he had violated its no-contest provision by filing and failing to dismiss the Texas Lawsuit and confirming Michael's proposed plan of distribution.

[¶12] Thomas appealed the district court's summary judgment order. We dismissed the appeal for lack of jurisdiction because the order was not appealable under Rule 1.05 of the Wyoming Rules of Appellate Procedure (W.R.A.P.) as it failed to resolve the counterclaims raised in Thomas's amended response to the Petition for Instructions. *Matter of Phyllis V. McDill Revocable Tr.*, 2020 WY 99, ¶¶ 14, 16, 468 P.3d 694, 699 (Wyo. 2020).

[¶13] On remand, Michael filed a motion to dismiss Thomas's counterclaims under Wyoming Rule of Civil Procedure (W.R.C.P.) 12(b)(6), arguing, *inter alia*, Thomas did not have statutory standing to bring his claims and his claims were barred by the statute of limitations. Thomas responded to the motion and filed a motion to again amend his

4

response to the Petition for Instructions to clarify his counterclaims and to add affirmative defenses.

[¶14]  After a hearing, the district court granted Michael's motion to dismiss and denied Thomas's motion to amend.  Relevant here, it concluded (1) Thomas lacked statutory standing to bring his breach of trust claims against Michael because he was no longer a trust beneficiary due to his violation of the no-contest provision; and (2) his counterclaims challenging the validity of certain language in the third and fourth amendments to the trust were time barred under § 4-10-604(a)(ii) because he failed to bring them within 120 days of his receipt of the statutory notice.  It denied Thomas's motion to amend because it was unduly delayed and any amendment would be futile.  Thomas timely appealed.

## DISCUSSION

### *Summary Judgment*

[¶15]  Thomas argues the district court erred in granting summary judgment to Michael for two reasons.  First, he claims the court erred in relying on the factual allegations contained in the Petition for Instructions because he entered a general denial to those allegations under W.R.C.P. 8(b)(3).  Second, he maintains the court erred as a matter of law in determining his filing of the Texas Lawsuit violated the trust's no-contest provision.[2]

[¶16] We review de novo the district court's order granting summary judgment to Michael.  *Bear Peak Res., LLC v. Peak Powder River Res., LLC*, 2017 WY 124, ¶ 10, 403 P.3d 1033, 1040 (Wyo. 2017).

> "[W]e review a summary judgment in the same light as the district court, using the same materials and following the same standards. *Snyder v. Lovercheck*, 992 P.2d 1079, 1083 (Wyo. 1999); *40 North Corp. v. Morrell*, 964 P.2d 423, 426 (Wyo. 1998). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id*. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id*. . . ."

---

[2] Thomas also argues the evidence was insufficient to show he received the statutory notice.  This argument pertains to whether the district court properly dismissed certain counterclaims as barred by the statute of limitations.  As a result, we will discuss this argument in addressing the propriety of the court's dismissal order.

*Id.* (quoting *Rogers v. Wright*, 2016 WY 10, ¶ 7, 366 P.3d 1264, 1269 (Wyo. 2016), and *Inman v. Boykin*, 2014 WY 94, ¶ 20, 330 P.3d 275, 281 (Wyo. 2014)). We also review de novo the district court's interpretation of the trust. *Jackson as Tr. of Phillip G. Jackson Fam. Revocable Tr. v. Montoya,* 2020 WY 116, ¶ 16, 471 P.3d 984, 988 (Wyo. 2020) (citing *Gowdy v. Cook*, 2020 WY 3, ¶ 39, 455 P.3d 1201, 1210-11 (Wyo. 2020), and *Forbes v. Forbes*, 2015 WY 13, ¶ 23, 341 P.3d 1041, 1051 (Wyo. 2015)).

[¶17]  The district court's order granting Michael's motion for summary judgment recited what it found to be undisputed material facts and indicated that those facts came from both Michael's Petition for Instructions and his Statement of Facts submitted in support of summary judgment. It relied on Thomas's failure to deny some of those facts in his responses to the Petition. Thomas claims the district court should not have relied on any facts from the Petition because he generally denied those facts in his responses and they were not "deemed admitted" under W.R.C.P. 8(b)(6) because the rules do not require a response to a "petition."[3]  It is unnecessary for us to address this issue because Michael presented sufficient facts to support summary judgment without reliance on any facts alleged in the "petition."

[¶18]  W.R.C.P. 56(a) requires a district court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "'The party requesting a summary judgment bears the initial burden of establishing a *prima facie* case for summary judgment.'" *Gowdy*, ¶ 22, 455 P.3d at 1207 (quoting *Hatton v. Energy Elec. Co.*, 2006 WY 151, ¶ 9, 148 P.3d 8, 12 (Wyo. 2006)). "Once the movant establishes a *prima facie* case for summary judgment, the burden shifts to the opposing party to present materials demonstrating a genuine dispute as to a material fact for trial." *Id.*, ¶ 23, 455 P.3d at 1207 (citing *Hatton*, ¶ 9, 148 P.3d at 12-13). "'"The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment[.]"'" *Id.* (quoting *Jones v. Schabron*, 2005 WY 65, ¶ 10, 113 P.3d 34, 37 (Wyo. 2005), and *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 519 (Wyo. 1994)).

[¶19]  Michael provided copies of: (1) the trust and its amendments, including the fourth amendment which contained the no-contest provision; (2) Thomas's petition in the Texas Lawsuit which sought to invalidate the third and fourth amendments to the trust; (3) Michael's notice of intent to enforce the trust's no-contest provision; and (4) the tracking confirmation demonstrating the notice of intent to enforce the no-contest provision was delivered by certified mail to Thomas's Texas address on July 23, 2018. Michael also requested the district court take judicial notice that the Texas Lawsuit was dismissed and provided a copy of the dismissal order. These documents established a *prima facie* case that Thomas had violated the trust's no-contest provision by filing the Texas Lawsuit

---

[3] We need not determine whether the "petition" was in fact a complaint for declaratory judgment, to which an answer would be required, or was something other than a pleading allowed by W.R.C.P. 7.

seeking to invalidate the third and fourth amendments to the trust and failing to dismiss or withdraw it within 30 days of receiving notice of Michael's intent to enforce the no-contest provision.

[¶20] The burden then shifted to Thomas to present specific evidence demonstrating a genuine dispute of material fact as to the validity of the no-contest provision or his violation of it. He failed to meet his burden because he did not timely respond to the summary judgment motion. As a result, the district court properly granted summary judgment to Michael and ruled Thomas had forfeited his interest as a trust beneficiary by violating the no-contest provision. *See Magin v. Solitude Homeowner's Inc.*, 2011 WY 102, ¶ 39, 255 P.3d 920, 932 (Wyo. 2011) (the district court properly granted summary judgment to plaintiff because defendant did not file a response to plaintiff's summary judgment motion and therefore failed to raise any genuine issue of material fact for trial).

[¶21] Despite his failure to meet his summary judgment burden, Thomas nevertheless argues the district court erred in interpreting the no-contest provision. According to him, the provision requires a "contest" to be "unsuccessful," which means it must be decided on the merits such that it would be given res judicata effect. Thomas argues the dismissal of his Texas Lawsuit on jurisdictional grounds is not a dismissal on the merits and not subject to res judicata. Indeed, he points out he alleged the same claims raised in the Texas Lawsuit as counterclaims in this lawsuit.

[¶22] There are two problems with Thomas's argument. First, he failed to raise it in the district court. "'Issues raised for the first time on appeal generally will not be considered by this court unless they are jurisdictional or issues of such a fundamental nature that they must be considered.'" *Gjertsen v. Haar*, 2015 WY 56, ¶ 15, 347 P.3d 1117, 1123 (Wyo. 2015) (quoting *Byrd v. Mahaffey*, 2003 WY 137, ¶ 10, 78 P.3d 671, 674 (Wyo. 2003)). Thomas's argument is neither jurisdictional nor fundamental. Second, his argument lacks merit.

[¶23] "No-contest . . . clauses are valid in Wyoming." *Gowdy*, ¶ 39, 455 P.3d at 1210 (citing *EGW v. First Fed. Savings Bank of Sheridan*, 2018 WY 25, ¶ 18, 413 P.3d 106, 110 (Wyo. 2018), and *Dainton v. Watson*, 658 P.2d 79, 81 (Wyo. 1983)). "The intent of the settlor regarding contests to the trust is controlling." *Id.* (citing *EWG*, ¶ 19, 413 P.3d at 111). We determine that intent from "the plain language contained in the four corners of the [trust]. Where there is no ambiguity and the language is clear and susceptible of only one construction, then the plain provisions of the trust instrument must be given effect." *In re Est. of George*, 2011 WY 157, ¶ 65, 265 P.3d 222, 235 (Wyo. 2011) (citing *Rock Springs Land & Timber, Inc. v. Lore*, 2003 WY 100, 75 P.3d 614, 619-20 (Wyo. 2003)).

[¶24] The no-contest provision of the trust disinherits any person who "directly or indirectly contests or attacks [the trust] or any trust or beneficial interest created hereunder[.]" The trust states a "contest" occurs when, among other things, a person

7

"unsuccessfully contests or, in any manner, attacks or seeks to impair or invalidate any provision of this [trust] . . . on any grounds whatsoever." Thomas does not dispute the Texas Lawsuit contested, attacked, or sought to impair or invalidate the trust. He argues only that the Texas Lawsuit was not technically "unsuccessful" because it was dismissed on jurisdictional grounds rather than on the merits.

[¶25] The plain meaning of "unsuccessful" is "not successful: not meeting with or producing success." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/unsuccessful (last visited Feb. 28, 2022). "Success" means "favorable or desired outcome." *Id.*, https://www.merriam-webster.com/dictionary/success (last visited Feb. 28, 2022). Thomas's Texas Lawsuit was "unsuccessful" because it did not produce a favorable or desired outcome. It was dismissed.

[¶26] The district court did not err in granting summary judgment to Michael on his claim Thomas forfeited his beneficiary status and was disinherited from taking under the trust because he violated its no-contest provision.

### *Dismissal of Counterclaims*

[¶27] Thomas argues the district court erred in dismissing his breach of trust counterclaims against Michael for lack of statutory standing because that ruling was based on its erroneous summary judgment decision that he was disinherited from taking under the trust for violating the no-contest provision. With respect to his counterclaims seeking to invalidate the third and fourth amendments to the trust, Thomas maintains there was insufficient evidence showing he received the statutory notice necessary to trigger the 120-day statute of limitations contained in § 4-10-604(a)(ii).

[¶28] Our review of the district court's dismissal order is de novo. *Craft v. State ex rel. Wyo. Dep't of Health*, 2020 WY 70, ¶ 9, 465 P.3d 395, 399 (Wyo. 2020) (citing *Allred v. Bebout*, 2018 WY 8, ¶ 29, 409 P.3d 260, 268 (Wyo. 2018)).

> "[W]e employ the same standards and examine the same materials as the district court: we accept the facts alleged in [Thomas's response to the Petition for Instructions] as true and view them in the light most favorable to the non-moving party." *Moose Hollow Holdings, LLC v. Teton Cty. Bd. of Cty. Comm'rs*, 2017 WY 74, ¶ 20, 396 P.3d 1027, 1033 (Wyo. 2017) (quoting *Guy v. Lampert*, 2015 WY 148, ¶ 12, 362 P.3d 331, 335 (Wyo. 2015)). . . . Dismissal is appropriate only if it is certain on the face of the [response that Thomas] cannot assert any facts that create entitlement to relief. *Dowlin v. Dowlin*, 2007 WY 114, ¶ 6, 162 P.3d 1202, 1204 (Wyo. 2007);

8

*Id*. We also review de novo whether a party has standing to assert his claims and whether an action is barred by the statute of limitations. *HB Fam. Ltd. P'ship v. Teton Cty. Bd. of Cty. Comm'rs*, 2020 WY 98, ¶ 16, 468 P.3d 1081, 1087 (Wyo. 2020) (standing) (citations omitted); *Inman*, ¶ 21, 330 P.3d at 281 (statute of limitations) (citations omitted).

[¶29] We start with Thomas's standing argument. "'A party generally has standing if it is "properly situated to assert an issue for judicial determination."'" *Matter of Est. of Stanford*, 2019 WY 94, ¶ 9, 448 P.3d 861, 864 (Wyo. 2019) (quoting *Gheen v. State ex rel. Dep't of Health, Div. of Healthcare Financing/EqualityCare*, 2014 WY 70, ¶ 16, 326 P.3d 918, 923 (Wyo. 2014), and *Cox v. City of Cheyenne*, 2003 WY 146, ¶ 9, 79 P.3d 500, 505 (Wyo. 2003)). There are two types of standing: prudential and statutory. *Id.*, ¶ 9, 448 P.3d at 864 (citing *In re L-MHB*, 2018 WY 140, ¶¶ 19-20, 431 P.3d 560, 567 (Wyo. 2018)). Prudential standing requires application of the *Brimmer* test, a four-part test to determine "whether there is 'such dispute which could serve as the basis of a justiciable issue[.]'" *Allred*, ¶ 37, 409 P.3d at 270 (quoting *Brimmer v. Thomson*, 521 P.2d 574, 577 (Wyo. 1974)). Statutory standing, on the other hand, "looks to whether '*this* plaintiff has a cause of action under [the subject] statute.'" *Stanford*, ¶ 11, 448 P.3d at 864 (quoting *In re L-MHB*, ¶ 20, 431 P.3d at 56 (Wyo. 2018), and *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2, 118 S.Ct. 1003, 1013 n.2, 140 L.Ed.2d 210 (1998)). "Where the question is statutory standing, prudential considerations do not play a role in the standing determination." *Id*.

[¶30] Thomas's breach of trust counterclaims alleged that Michael, as trustee, violated his duties of loyalty and to inform and report to the beneficiaries under §§ 4-10-802 and 4-10-813. Whether Thomas has a cause of action against Michael under these statutes is a question of statutory standing. *Stanford*, ¶ 13, 448 P.3d at 865 ("The question of who has standing to contest a petition for letters of administration is thus one of statutory interpretation, not prudential considerations.").

[¶31] The Uniform Trust Code imposes a duty of loyalty and a duty to inform and report upon the trustee. Sections 4-10-802(a), 4-10-813. These duties are owed to the beneficiaries and qualified beneficiaries of a trust, respectively. Sections 4-10-802(a) ("A trustee shall administer the trust solely in the interests of the *beneficiaries* as their interests are defined under the terms of the trust.") (emphasis added), 4-10-813(a) ("A trustee shall keep the *qualified beneficiaries* of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests. . . .") (emphasis added). The Code also states: "[A] violation by a fiduciary of a duty the fiduciary owes to a *beneficiary* is a breach of trust." Wyo. Stat. Ann. § 4-10-1001(a) (LexisNexis 2021) (emphasis added). Under the plain language of these provisions, it is clear the legislature intended only qualified beneficiaries and beneficiaries to have standing

to assert a breach of trust claim against a trustee. Thomas is not a beneficiary or qualified beneficiary of the trust because, as we explained above, he lost his beneficiary status by violating the no-contest provision. *See* Wyo. Stat. Ann. § 4-10-103(a)(ii) (LexisNexis 2021) (defining beneficiary as "a person that . . . [h]as a present or future beneficial interest in a trust, vested or contingent; or . . . [i]n a capacity other than that of trustee or trust protector, holds a power of appointment over trust property"), (a)(xv) ("'Qualified beneficiary' means . . . "[a] beneficiary who is currently entitled to mandatory distributions of income or principal from the trust or has a vested remainder interest in the residuary of the trust which is not subject to divestment."). As a result, the district court correctly decided Thomas lacked statutory standing to bring his breach of trust counterclaims against Michael.

[¶32]   Turning to Thomas's counterclaims which attack the validity of the third and fourth amendments to the trust, § 4-10-604(a) provides:

> Subject to the rights of persons dealing with a fiduciary as provided in W.S. 4-10-1013, a person may commence a judicial proceeding to contest the validity of a trust that is revocable during the settlor's life or an amendment thereto within the earlier of:
> (i)  Two (2) years after the settlor's death; or
> (ii) One hundred twenty (120) days after the trustee sent the person a copy of the trust instrument and a notice informing the person of the trust's existence, of the trustee's name and address and of the time allowed for commencing a proceeding.

Section 4-10-604(c) states:  "For purposes of paragraph (a)(ii) of this section, notice shall have been given when received by the person to whom the notice was given.  Absent evidence to the contrary, it shall be presumed that delivery to the last known address of that person constitutes receipt by that person."[4]

---

[4] Thomas relies on Wyo. Stat. Ann. § 4-10-109(a) (LexisNexis 2021) for his argument that there was insufficient evidence showing he received the statutory notice necessary to trigger the 120-day statute of limitations contained in § 4-10-604(a)(ii).  Section 4-10-109(a) provides:

> Notice to a person under [the Uniform Trust Code] or the sending of a document to a person under this [Code] shall be accomplished in a manner reasonably suitable under the circumstances and that results in receipt of the notice or document. Permissible methods of notice, or for sending a document, include first-class mail, personal delivery, delivery to the person's last known place of residence or place of business or a properly directed electronic message.

While this statute generally governs notices under the Code, § 4-10-604(c) controls because it specifically addresses statutory notice under § 4-10-604(a)(ii). *See Olsen v. State*, 2003 WY 46, ¶ 168, 67 P.3d 536,

[¶33] Thomas claims the only evidence demonstrating he received statutory notice triggering the 120-day statute of limitations was a USPS tracking printout, which was inadmissible hearsay, lacked authenticity, and failed to indicate what was delivered, to whom it was delivered, or where it was delivered. Because there was insufficient evidence showing he received the statutory notice, he claims the two-year statute of limitations contained in § 4-10-604(a)(i) applies and his counterclaims were timely because they were filed on May 20, 2019, within two years of Phyllis's death.

[¶34] Thomas did not raise this argument in the district court. He did not claim he failed to receive statutory notice or argue that the USPS tracking printout was insufficient to show he received the statutory notice. In response to Michael's motion to dismiss, Thomas simply claimed his counterclaims were not barred by the statute of limitations and Michael's argument to the contrary "incorrectly assumes the Texas litigation has been finally concluded when it has not." As a result, we need not consider this argument. *Gjertsen*, ¶ 15, 347 P.3d at 1123. In any event, because he did not provide any evidence that the statutory notice was not delivered to his last known address, he failed to overcome the presumption contained in § 4-10-604(c) that he received the statutory notice.

[¶35] The district court did not err in dismissing Thomas's counterclaims for lack of statutory standing and on statute of limitations grounds.

### *Denial of Motion to Amend*

[¶36] We review a district court's denial of a motion to amend for an abuse of discretion. *Halling v. Yovanovich*, 2017 WY 28, ¶ 22, 391 P.3d 611, 619 (Wyo. 2017) (citation omitted). In determining whether a district court abused its discretion, "'[o]ur touchstone inquiry . . . is whether the trial court could have reasonably concluded as it did.'" *Id.* (quoting *Gould v. Ochsner*, 2015 WY 101, ¶ 39, 354 P.3d 965, 977 (Wyo. 2015), and *Lavitt v. Stephens*, 2015 WY 57, ¶ 13, 347 P.3d 514, 518 (Wyo. 2015)).

[¶37] W.R.C.P. 15(a)(2) states: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

---

596 (Wyo. 2003) ("Where a general statute and a specific statute speak to the same concern, precedence is given to the terms of the more specific statute.").

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given.

*Gaston v. Life Care Ctrs. of Am.*, 2021 WY 74, ¶ 18, 488 P.3d 929, 936 (Wyo. 2021) (quoting *Foxley & Co. v. Ellis*, 2009 WY 16, ¶ 32, 201 P.3d 425, 433 (Wyo. 2009), and *Beaudoin v. Taylor*, 492 P.2d 966, 970 (Wyo. 1972)). "The same standard applies when a counterclaimant seeks to amend a counterclaim." *Singer v. Lajaunie*, 2014 WY 159, ¶ 25, 339 P.3d 277, 285 (Wyo. 2014) (citing *Hawkeye–Security Ins. Co. v. Apodaca*, 524 P.2d 874, 879 (Wyo. 1974)).

[¶38]   Thomas argues the district court abused its discretion by denying his motion to amend because amendment "would have allowed the court to finally do justice in this matter complete with well-formulated Pleadings, Discovery, Motions and Trial." Although "[t]his type of perfunctory argument usually results in our refusal to consider the issue," we will nevertheless address it "because the denial of a motion for leave to amend . . . is, in effect, the death knell for the case." *Daniels v. Carpenter*, 2003 WY 11, ¶ 32, 62 P.3d 555, 566 (Wyo. 2003) (citing *Mt. Rushmore Broadcasting, Inc. v. Statewide Collections*, 2002 WY 39, ¶ 12, 42 P.3d 478, 482 (Wyo. 2002), *40 North Corp.*, 964 P.2d at 427, and *Scherling v. Kilgore*, 599 P.2d 1352, 1359 (Wyo. 1979)).

[¶39]   Thomas did not file his motion to amend until over two years after the Petition for Instructions was filed, approximately five months after the case was remanded from this Court following his first appeal, and over three months after Michael filed his motion to dismiss. Thomas's motion to amend came after the district court had granted summary judgment in favor of Michael and determined Thomas was disinherited from the trust due to his violation of the no-contest provision. It also came just four days before the court's scheduled hearing on Michael's motion to dismiss. Thomas offered no reasons justifying the delay in seeking amendment other than that his previous response and amended response were filed pro se, which is an insufficient excuse for the delay. *Cf. Wood v. Wood*, 2018 WY 93, ¶ 11, 424 P.3d 247, 250 (Wyo. 2018) (although pro se litigants are "entitled to 'a certain leniency' from the more stringent standards accorded formal pleadings drafted by lawyers[,] . . . the administration of justice requires reasonable adherence to procedural rules and requirements of the court." (quoting *Osborn v. Painter*, 909 P.2d 960, 965 (Wyo. 1996))) (other citation omitted). Under these circumstances, we cannot say the district court acted unreasonably in denying Thomas's motion to amend for undue delay. *Halling*, ¶ 25, 391 P.3d at 620 (district court did not abuse its discretion by denying for undue delay

12

defendant's motion for leave to amend its answer to add a counterclaim against plaintiff where motion was made after district court granted summary judgment to plaintiff); *Foxley*, ¶ 33, 201 P.3d at 433 (district court did not abuse its discretion by denying motion to file a second amended complaint where motion was made seven months after original complaint was filed, after extensive discovery had ensued, and one month after defendant's summary judgment motion was filed).

[¶40] Moreover, the district court correctly decided Thomas's proposed amendments would be futile. "'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment.'" *Halling*, ¶ 26, 391 P.3d at 620 (quoting *Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001)). The proposed amended response asserted the following counterclaims: (1) the third and fourth amendments to the trust were the product of undue influence and therefore void; (2) Michael breached his duty to provide a trust accounting; and (3) Michael breached his fiduciary duty by unlawfully converting and wasting trust assets. It also claimed Michael's violations of his fiduciary duties necessitated his removal as trustee. As we discussed above, the proposed counterclaims seeking to invalidate the third and fourth amendments to the trust and to hold Michael, as trustee, liable for breach of trust would be subject to dismissal under the statute of limitations and for lack of statutory standing, respectively. Moreover, because Thomas is disinherited from taking under the trust, he could not state a claim for conversion of trust assets as he does not have legal title to, or the right to possess, any of those assets. *See Tozzi v. Moffett*, 2018 WY 133, ¶ 19, 430 P.3d 754, 760 (Wyo. 2018) (a plaintiff alleging conversion must prove, among other things, "'he had legal title to the converted property'" and "'he either had possession of the property or the right to possess it at the time of the conversion'" (quoting *Johnson v. Reiger*, 2004 WY 83, ¶ 27, 93 P.3d 992, 999-1000 (Wyo. 2004)).

[¶41] The district court did not abuse its discretion in denying Thomas's motion to amend.

**CONCLUSION**

[¶42] The district court did not err in granting summary judgment to Michael on his claim Thomas was disinherited from taking under the trust for violating its no-contest provision. It also did not err in dismissing Thomas's breach of trust counterclaims for lack of statutory standing and his counterclaims attacking the validity of the third and fourth amendments of the trust as untimely. The court did not abuse its discretion in denying Thomas's motion to amend his response to the Petition for Instructions. We affirm the district court's judgment in all respects.

[¶43] Michael requests we assess the costs of this appeal to Thomas because he improperly captioned the appeal, included a timeline in the appendix that is not in the record, and failed to include a jurisdictional statement, a statement of costs, or cogent

argument in his brief. He does not request his attorney fees. Michael's request for costs is unnecessary as the costs of this appeal will automatically be awarded to him in the Journal Order on Opinion. W.R.A.P. 10.05 ("When the judgment or appealable order is affirmed in a civil case, appellee shall recover costs."). However, we revise the caption of this appeal to strike the reference to Thomas as "successor trustee" and to reflect that Michael is acting solely in his capacity as trustee of the trust.